487 So.2d 360 (1986)
Janice RUBIN, Appellant,
v.
BRUTUS CORPORATION and Galaxy Boat Manufacturing Co., Inc., Appellees.
No. AY-242.
District Court of Appeal of Florida, First District.
April 15, 1986.
Rehearing Denied May 14, 1986.
*361 J. Richard Moore, Jacksonville, for appellant.
John Moffitt Howell, of Howell & Howell, Jacksonville Beach, for appellee, Brutus Corp.
*362 Sam Daniels and Elizabeth K. Clarke, of Daniel & Hicks, Miami, for appellee, Galaxy Boat Mfg. Co.
ZEHMER, Judge.
In this personal injury action plaintiff appeals a summary judgment for defendants, manufacturers of a boat and its components. Summary judgment was granted on the ground that the crashworthiness doctrine recognized in product liability cases is not applicable to accidents involving persons riding in pleasure boats. Finding no substantial reason on the record before us for legally differentiating between the duty of care owed by the manufacturer of the pleasure boat in this case and manufacturers of other types of vehicles to which the crashworthiness doctrine has been applied, we reverse and remand for further proceedings.
On August 30, 1980, appellant, Janice Rubin, was a passenger in a motor boat traveling about thirty miles per hour and pulling a waterskier when the boat was negligently steered into a collision with a fixed channel marker. The seat on which Rubin was seated came loose and collapsed on impact, resulting in her being thrown forward over the seat into a bulkhead and railing located near the forward part of the boat. Rubin suffered a broken neck and is now a quadraplegic.
Rubin sued Galaxy Boat Manufacturing Company for defective design and assembly of certain components of the boat, and sued Brutus Corporation for defective design, manufacture, or installation of the seats and padding. The complaint included counts for negligence, breach of warranty, and strict liability.[1] The record contains evidence, disputed by appellees, that indicates that the seat installation was defectively designed and manufactured in a number of respects which, for purposes of this opinion, we need not describe in detail. After substantial discovery, defendants moved for summary judgment on the ground that the undisputed facts established as a matter of law that defendants did not breach any legal duty owed to plaintiff. The trial court granted summary judgment for both defendants on the express ruling that "the crashworthiness doctrine does not apply to pleasure boats in this state", citing Outboard Marine Corp. v. Apeco Corp., 348 So.2d 5 (Fla. 3d DCA 1977). Plaintiff has appealed this ruling.
We first deal with the law to be applied in determining liability. Appellee Galaxy contends, and plaintiff now agrees, that federal maritime law, not state law, governs the liability issue in this case.[2] We find no compelling reason not to accept this contention. Even though this is a maritime claim, the savings clause in 28 United States Code, section 1333, permits plaintiff to bring her action in state court. Still v. Dixon, 337 So.2d 1033 (Fla. 2d DCA 1976); Rountree v. A.P. Moller Steamship Co., 218 So.2d 771 (Fla. 1st DCA 1969). The boat in question was being operated upon navigable waters within the state when the collision occurred, and claims for injuries occurring on navigable waters based on negligent design and manufacture of boats and components, even though the defendants' complained-of conduct may have occurred ashore, are governed by maritime law. Moser v. Texas Trailer Corp., 623 F.2d 1006 (5th Cir.1980); Cigarette Racing Team, Inc. v. Gandee, 418 So.2d 337 (Fla. 3d DCA 1982); Rountree v. A.P. Moller Steamship Co., 218 So.2d 771; Ingram River Equipment, Inc. v. Pott Industries, Inc., 573 F. Supp. 896 (E.D.Mo. 1983); In re Oil Spill By Amoco Cadiz, 491 F. Supp. 170 (N.D.Ill. 1979). General maritime law has usually adopted and followed the principles of general tort law, including products *363 liability doctrines. See generally, 1 Norris, The Law of Maritime Personal Injuries, § 175, et seq. (3rd ed. 1975). For this reason, it is necessary to look to general tort cases for guidance in determining whether the crashworthiness doctrine applies to pleasure boats. Before doing so, however, we first consider appellee Galaxy's argument based on the Federal Boat Safety Act.
Galaxy contends that by reason of the enactment of the Federal Boat Safety Act of 1971, 46 U.S.C., §§ 1451-1489 (now codified, in part, as 46 U.S.C., §§ 4301-4301), Congress has preempted the field of regulating boat safety requirements for manufacturers and therefore precluded the application of state law crashworthiness standards. In effect, Galaxy argues that this act is the exclusive basis for a boat manufacturer's liability and that the record shows that the seat installation did not violate any regulations promulgated under the act. It relies specifically upon the preemption provisions in section 1459, entitled "Federal preemption in issuance of standards."[3] As we read this section in context with the other language of the act, its purpose is to standardize regulations applicable to the manufacture of boats by precluding states from adopting requirements that conflict with federal standards. We are equally sure, however, that compliance with federal standards promulgated under this act was not intended to "relieve any person from liability at common law or under State law." 46 U.S.C. § 1489 (now § 4311). We do not believe that the federal act is intended to be the exclusive basis for a boat manufacturer's liability for damages under maritime or civil law because the act recognizes, by express language in section 1464 (now § 4310), entitled "Repair or replacement of defects," that manufacturers of boats are under a duty to give notice that "a boat or associated equipment subject to an applicable standard or regulation prescribed pursuant to section 1454 of this title either fails to comply with such standard or regulation, or contains a defect which creates a substantial risk of injury to the public" (emphasis added). That section further provides that the notice "shall contain a clear description of such defect or failure to comply, an evaluation of the hazard reasonably related thereto, a statement of the measures to be taken to correct such defect or failure to comply, and an undertaking by the manufacturer to take such measures at his sole cost and expense." The reference in this section both to noncompliance with the regulations and to defects creating substantial risks of injury rather strongly suggests a legislative intention that compliance with regulations promulgated under the act does not necessarily satisfy the manufacturer's duty of care to the public.
The language and purpose of the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. §§ 1381-1431, is quite similar to that of the Federal Boat Safety Act; yet it too contains a provision that compliance with the act does not exempt persons from liability under the common law. 15 U.S.C. § 1397(c). That act has been construed to mean that compliance with regulations governing manufacturing does not necessarily relieve the manufacturer of liability under general tort law. Dorsey v. Honda Motor Co., 655 F.2d 650 (5th Cir.1981). We believe the reasoning of that decision is persuasive support for a similar construction of the Federal Boat Safety Act.
We now turn to the crucial issue on appeal, viz., whether, under the general maritime law, the crashworthiness doctrine *364 recognized by general tort law should be held inapplicable, as a matter of law, to the pleasure boat accident in this case. That doctrine is predicated on the legal duty of a manufacturer to use reasonable care in the design and manufacture of a product to eliminate unreasonable risks of foreseeable injury to persons using it, and imposes liability on the manufacturer for "injuries sustained in secondary collisions between occupants and components of the vehicle in which they were riding when the injury was caused or enhanced by some such design or manufacturing defect and was reasonably foreseeable and reasonably could have been avoided." E.g., Ford Motor Co. v. Evancho, 327 So.2d 201, 203 (Fla. 1976); Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir.1968). This so-called secondary impact theory has been applied to manufacturers of cars, Larsen v. General Motors Corp., 391 F.2d 495, motorcycles, Nicolodi v. Harley-Davidson Motor Co., 370 So.2d 68 (Fla. 2d DCA 1979), and airplanes, Duncan v. Cessna Aircraft Co., 632 S.W.2d 375 (Tex. App. 1982), but we have not been cited to any case, nor have we found any, in which it has been applied to accidents involving boats. Regardless of the product, however, the basic duty underlying this legal theory is the same  to use reasonable care in the design and manufacture of a product to protect against a foreseeable risk of injury in a collision. The issue of foreseeability is but one aspect of the element of causation, and whether a particular risk of injury is foreseeable is usually a question of fact for the jury. E.g. Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520 (Fla. 1980); Vining v. Avis Rent-A-Car Systems, Inc., 354 So.2d 54 (Fla. 1978); Paterson v. Deeb, 472 So.2d 1210 (Fla. 1st DCA 1985).[4] Unless the basic underlying facts are completely without dispute, the question of foreseeability cannot be decided on summary judgment as a matter of law. E.g., Mitchell v. Robbins, 447 So.2d 1034 (Fla. 4th DCA 1984).
The court below cited Outboard Marine Corp. v. Apeco Corp., 348 So.2d 5, as authority for its conclusion that the crashworthiness doctrine is never applicable to pleasure boats. We disagree with the court's reliance on Outboard Marine, not only because that case was decided under state law, not federal maritime law, but also because the facts and issues in that case were materially different from those in the present case. In Outboard Marine, Apeco, the boat manufacturer, sued Outboard Marine, the manufacturer of the engine, for indemnity in a personal injury action by an occupant against both of them. Apeco was granted a directed verdict against Outboard Marine upon a finding that "the claimed inadequacy of the forward rail had no relationship to the injury of the plaintiff" occupant and that defendant Apeco "had no duty to design the boat in order to guard against the violent accident caused by the failure of the steering mechanism, which was a part of the engine supplied by Outboard Marine Corporation." 348 So.2d at 5-6. This indicates that the requisite causal relationship between the alleged defect and the resulting injury was so clearly lacking that the manufacturer could not be held to have reasonably foreseen the risk of injury that actually occurred due to the failure in the steering mechanism. It is one thing to hold that the unique failure in the steering mechanism which caused this accident was not foreseeable as a matter of law. It is a completely different thing to hold that a collision by a moving boat with a stationary object in the water is not foreseeable as a matter of law. To construe the court's holding in Outboard Marine as an unqualified rejection of the application of the crashworthiness doctrine to boats in each *365 and every situation, regardless of the evidence on the foreseeability of the risk or causal relationship, would go far beyond the actual facts and issues discussed in the court's opinion.
In summary, it is well established that a boat manufacturer has a legal duty to exercise due care in the design and production of its product to prevent defects that constitute a substantial risk of foreseeable injury to persons using the boat. We conclude that the record in this case does not show by undisputed evidence any significant reason to carve out a distinction between the boat in this case and the other types of vehicles to which the crashworthiness doctrine has been applied. Appellees have set forth several policy arguments in their attempt to persuade us against applying the crashworthiness doctrine to boats, but the factual basis of these arguments is not without dispute in the record. For example, the statistical arguments, pro and con, concerning the frequency of boating accidents and the effect of these statistics on the reasonable foreseeability of pleasure boat accidents are based on disputed statistical facts. Whether such statistical arguments may ultimately support a conclusion by the trier of fact that the accident in this case was or was not reasonably foreseeable remains for determination at trial. Whether the risk of injury to the plaintiff was reasonably foreseeable depends on the resolution of disputed issues of fact in light of the evidence presented. Whether the design and installation of the seat and other components was defective and in violation of the defendants' legal duty to the plaintiff depends on the resolution of disputed issues of fact. For these reasons, the summary judgment must be reversed and the case remanded for further proceedings.
REVERSED and REMANDED.
SHIVERS, J., concurs.
BOOTH, C.J., dissents without written opinion.
NOTES
[1] Plaintiff also sued Happel Marine, Inc., the manufacturer of the handrail located on the boat, and Locks Screen Company, Inc., the manufacturer of fasteners used in the boat. Prior to entry of summary judgment, those claims were settled and those defendants were dismissed from the case.
[2] Brutus Corporation has taken no position on this question, but it relies heavily on the decision in Outboard Marine Corp. v. Apeco Corp, supra.
[3] This section provides:

"Unless permitted by the Secretary under section 1458 of this title, no State or political subdivision thereof may establish, continue in effect, or enforce any provision of law or regulation which establishes any boat or associated equipment performance or other safety standard, or which imposes any requirement for associated equipment, except, unless disapproved by the Secretary, the carrying or using of marine safety articles to meet uniquely hazardous conditions or circumstances within the State, which is not identical to a Federal regulation issued under section 1454 of this title."
[4] We cite these cases as illustrative because they involved intervening acts of persons other than the defendant which were held not to establish lack of foreseeability as a matter of law. These cases are analogous because the intervening negligence of the driver of the boat in the instant case, though an intervening cause, does not necessarily negate the manufacturers' liability for injuries caused by the defective boat design or construction if the likelihood of the collision and the resulting injury is shown by the evidence to be reasonably foreseeable.