Polly Sutton DAVIS and
Ed Davis, Plaintiffs,

v.

BRUNSWICK CORPORATION, d/b/a Mercury Marine Division, and Galaxy Boat Manufacturing Co., Inc., d/b/a Galaxy Boats, Defendants.

Civ. A. No. 1:91–CV–1943–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 26, 1993.

Order on Motions to Clarify
and Reconsider March 17, 1994.

**1576**

Paul M. Hoffman, Michael David Deming, James Richard Green, Jr., Mark Andrew Lewis, Deming, Deming, Born & Parker, Norcross, GA, Dennis Joseph Myers, Sexton, Myers & Haffner, St. Louis, MO, for plaintiffs.

Ronald Louis Reid, R. Wayne Thorpe, James W. Hagan, Alston & Bird, James Errol Singer, Bovis, Kyle & Burch, Atlanta, GA, Kenneth R. Shuttleworth, James H. Crabtree, Jr., Shuttleworth, Smith, McNabb & Williams, Memphis, TN, for defendants.

## ORDER

J. OWEN FORRESTER, District Judge.

This matter is a product liability case for injuries suffered in a boating accident. Presently before the court are Defendants Galaxy Boat Manufacturing Company, Inc.'s, d/b/a Galaxy Boats, and Mercury Marine Division of the Brunswick Corporation's motions for summary judgment and motions for reconsideration. Defendant Mercury and Plaintiffs Polly Sutton Davis and Ed Davis also seek leave to file briefs in excess of twenty-five pages and leave to file supplemental memorandums in light of recent authority.

### I. FACTS

On July 16, 1989, Plaintiff Polly Davis was struck while swimming in Lake Oconee by a boat driven by her mother-in-law, Edna Davis. The boat was manufactured by Defendant Galaxy and equipped with an engine and out-drive manufactured by Defendant Mercury. Plaintiffs had not purchased this boat from the defendants, but from a private owner.

In April of 1990, Plaintiffs made a claim against Edna Davis. In the fall of 1990, a settlement agreement was reached between CNA Insurance Company, Edna Davis' liability carrier. CNA agreed to pay the policy limits of $100,000.00 in exchange for a release of claims. Plaintiffs executed a release which reads as follows:

> We, being of lawful age, do hereby release, acquit and forever discharge Samuel and Edna Davis and American Casualty Company under policy number N00–9693051 and *all other persons, firms and corporations, their heirs, successors, and assigns, who might be liable of and from any and all actions, causes of actions, claims, demands, damages on account of, or in any way growing out of, any and all known and unknown personal injuries resulting or to result from a certain incident which occurred on or about the 16th day of July, 1989, at or near Putnam County, Georgia.*

(Emphasis added). Plaintiffs filed suit against these defendants on July 15, 1991.

Mercury sold Galaxy the engine and out-drive in question on June 9, 1981. The engine and out-drive were shipped from Mercury's production facility in Stillwater, Oklahoma to Galaxy's plant in Columbia, South Carolina.[1] Galaxy installed the engine and out-drive in a Galaxy hull. The boat was thereafter sold to Jack Thompson. Jack Thompson registered the boat in 1981. The boat in question was not equipped with a propeller guard.

## II. MOTION FOR RECONSIDERATION

■ Defendants ask the court to reconsider its order of September 16, 1992, denying them leave to amend their answers to include the release as an affirmative defense. The court based its denial on the legal insufficiency of the release language itself. Specifically, the court examined the language in light of the Georgia Supreme Court opinion in *Posey v. Medical Center-West, Inc.*, 257 Ga. 55, 354 S.E.2d 417 (1987). The *Posey* decision held that a general release given to one joint tortfeasor does not release all joint tortfeasors unless it is agreed that the language releases them. *Id.* at 59, 354 S.E.2d 417. The Supreme Court also added that in ascertaining the intent of the parties, parol evidence may be used. In light of this decision, this Court looked first to the language and found it to be a general release within the meaning of *Posey*. The Court then considered evidence as to whether it was agreed that the language was intended to release these third parties, Mercury and Galaxy.

The Court found no evidence of extrinsic or parol evidence and found the language too general itself to release these defendants. Because this release did not release these defendants, amendment to the answer was inappropriate.

Defendants, in seeking reconsideration, argue that *Posey* did not specifically find that the general release language did not release the third parties. Defendants are correct. The *Posey* Court merely stated that release language does not release unless intent to do so can be shown. Defendants further argue that Plaintiffs have shown no extrinsic evidence that this language is not specific. Defendants argue, therefore, that the language is clear and unambiguous, as the court of appeals found before its reversal. *See McDowell v. Lackey*, 200 Ga.App. 506, 408 S.E.2d 481 (1991), *rev'd, Lackey v. McDowell*, 262 Ga. 185, 415 S.E.2d 902 (1992). In the alternative Defendants argue that this language is ambiguous and that this defense should be allowed to go to a jury to ascertain intent.

The Supreme Court in *Lackey* reversed the Court of Appeals because the Court of Appeals had not considered extrinsic evidence in determining the intent of the parties and had merely relied on rules of construction. This court specifically has looked for extrinsic evidence as to intent. None was presented in the motion or responses for reconsideration. Information contained in the summary judgment motions adds nothing to this discussion except to confirm that all negotiations which led to this release language were between CNA, Edna Davis and

---

1. Plaintiffs argue that the facts surrounding the sale and transfer of the engine and out-drive do not come from the personal knowledge of any witness. Fed.R.Evid. 803(6) provides:

   A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular business practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness [is admissible into evidence].

   Plaintiffs object specifically that the witnesses Debbie Gann and Alvin Ruth do not have or did not have personal knowledge of the transactions between Mercury and Galaxy. As the rule reads, however, the custodians need not have personal knowledge themselves. Rather, the information must have been originally recorded by persons with knowledge. Plaintiffs take no exception to the fact that Mercury and Galaxy personnel actually recorded their work in accordance with Mercury's and Galaxy's regularly conducted business practices. Plaintiffs' denial, therefore, lacks merit. No genuine dispute of material fact exists as to how the engine or out-drive came to be installed in the Mercury boat.

the plaintiffs. If anything, this additional evidence supports the court's previous order.

The language of the release clause itself evidences no specific intent to include these third parties. Contractual language of this sort is a general release as contemplated by the *Posey* Court. Language such as that found in this release is often boilerplate and not intended to target any specific joint tortfeasor. Absent extrinsic evidence that the parties intended to bind Galaxy and Mercury, the release is ineffective for the purpose of an affirmative defense in this case.[2]

## III. MOTIONS FOR SUMMARY JUDGMENT

Defendants move for partial summary judgment on three theories.[3] Defendants contend first that Plaintiffs' strict liability and negligence claims are barred by Georgia's statute of repose. Second, Defendants contend Plaintiffs' prop-related claims are preempted by the Federal Boat Safety Act of 1971. In the alternative, if not preempted, Defendants contend that an open boat propeller is not a defective product as a matter of law and does not give rise to a claim for negligent design since the danger is open and obvious. Third, Defendants contend that Plaintiffs' claims for breaches of express and implied warranties are barred by the statute of limitations and by the fact that no privity of contract existed between Galaxy or Mercury and the plaintiffs.[4]

### A. Statute of Repose

■ Defendants Galaxy and Mercury contend that Georgia's statute of repose bars Plaintiffs' strict liability and negligence claims. The Georgia Code provides in pertinent part:

> (b)(1) The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.
>
> (2) No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury....

2. Defendant Mercury has filed motion for leave to file a supplemental brief in support of its motion for reconsideration, bringing a recent Georgia Court of Appeals decision, *Kinsey v. Elrod*, 206 Ga.App. 375, 425 S.E.2d 395 (1993), to the court's attention. The *Kinsey* court's decision supports this court's reasoning as found in its previous order and as restated above. The Court of Appeals acknowledged the presumption that a release of one joint tortfeasor does not discharge other parties " 'unless it is agreed that it will discharge them,' and extrinsic evidence will be considered in determining whether the parties to the release agreed that other joint tortfeasors should be discharged." *Id.* at 376, 425 S.E.2d 395 (citing and quoting *Posey*, 257 Ga. at 59, 354 S.E.2d 417). It stated further that boilerplate language alone cannot overcome this presumption. *Id.* Since this case involves boilerplate language, and no extrinsic evidence was presented, Defendant Mercury's attempt to use this case to support a reconsideration of this court's previous order is without merit.

3. Defendants moved for summary judgment based on the previously discussed release language. Because this court denied leave to amend the answer to include this defense based on its legal insufficiency, the court does not consider the additional repeated discussion in the summary judgment motions.

4. Fed.R.Civ.P. 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Brown v. City of Clewiston*, 848 F.2d 1534, 1536 (11th Cir.1988). Once the movant carries his burden of asserting the basis for his motion, *see Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552–53, the non-moving party is then required "to go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. To survive a motion for summary judgment, the non-moving party must come forward with specific evidence of *every* element material to his case so as to create a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552–53; *Brown*, 848 F.2d at 1537.

(c) The limitation of paragraph 2 of subsection B of this code section regarding bringing an action within ten years from the date of the first sale for use or consumption of personal property shall also apply to the commencement of an action claiming negligence of a manufacturer as the basis of liability....

O.C.G.A. § 51-1-11. The Georgia Supreme Court has held previously that the first sale is the one to the actual consumer. *Hatcher v. Allied Products Corp.*, 256 Ga. 100, 344 S.E.2d 418 (1986). Simply stated, the statute bars any lawsuit brought more than ten years after the sale to the first consumer. *Id.* at 101, 344 S.E.2d 418.

This suit was filed on July 15, 1991. At issue, therefore, is whether the first sale to Jack Thompson occurred before July 15, 1981. Defendants point to the deposition testimony of Alvin Ruth, President of Galaxy Boats. He recalls, but is not absolutely positive, that Jack Thompson picked up the boat directly at the factory prior to the July 4 weekend in 1981. In addition, Defendants offer the affidavit of Barbara Coughlin from the Georgia Department of Natural Resources. She interprets the registration records as indicating that the boat was registered by Jack Thompson in July, 1981. She acknowledges that the record certificate pertaining to the boat in question has an expiration date of December, 1984. Beneath this expiration date, presumably hand-written by the clerk, is a notation that the registration was made in December, 1981. Ms. Coughlin swears this is merely an uninformed notation derived from subtracting three years from the December, 1984 date. She swears that at that time the backlog for registration was such that a July registration would have actually been finally recorded in December. Plaintiffs offer no evidence to dispute Defendants' evidence on this matter. None of this evidence, however, is completely conclusive. A reasonable trier of fact could conclude that the sale occurred in July but after July 15. The question as to whether this action is barred by the statute of repose, therefore, cannot be answered definitely on summary judgment.

**B.** *Preemption*

The Supremacy Clause of the United States Constitution vests Congress with the power to preempt state law. U.S. Const. art. VI, cl. 2. Congress may preempt expressly or implicitly. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Preemption occurs when the federal statutory scheme established by Congress completely occupies the subject area or when, even if the entire area is not occupied, conflict with the federal scheme makes the state law compliance impossible. *Fidelity Federal Savings and Loan Association v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *Florida Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 1217-18, 10 L.Ed.2d 248 (1963); *Stephen v. American Brands, Inc.*, 825 F.2d 312, 313 (11th Cir.1987). Preemption may also occur when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Stephen*, 825 F.2d at 313 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). Defendant has the burden of showing that Congress intended to preempt state law remedies. *Id.* Preemption is also to be determined by examining congressional intent. *Schneidewind v. A.N.R. Pipeline Co.*, 485 U.S. 293, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988).

When, however, Congress has explicitly considered and addressed the issue in a statute, and that provision provides a "reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to preempt state laws from the substantive provisions of the legislation." *Cipollone v. Liggett Group, Inc.*, — U.S. —, —, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992) (citing *Malone v. White Motor Corp.*, 435 U.S. 497, 505, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978); *California Federal Savings and Loan Association v. Guerra*, 479 U.S. 272, 282, 107 S.Ct. 683, 690, 93 L.Ed.2d 613 (1987)). As the *Cipollone* court stated further, "such reasoning is a variant of the familiar principle of expression *unius est exclusivo alterius:* Con-

gress' enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not preempted." *Id.* A court, therefore, must only identify the domain expressly preempted by a statute when specifically addressed.

■ The Federal Boat Safety Act speaks expansively in its preemption provision:

Unless permitted by the Secretary under 4305 of this title, a State or political subdivision of a State may not establish, continue in effect, or enforce a law or regulation establishing a recreational vehicle or associated equipment performance or other safety standard or imposing a requirement for associated equipment ... that is not identical to a regulation prescribed under section 4302 of this title.

46 U.S.C. § 4306. On its face this provision mandates that the Act precludes any regulation other than federal, except where parallel to the federal prescriptions. Beyond these precise words, however, the legislative history supports construing this provision against the presumption supporting state police power regulation. *See Cipollone,* —— U.S. at ——, 112 S.Ct. at 2608. The legislative history reads: "Section 4306 establishes the Federal preemption of recreational boating standards and requirements. A state or a political subdivision may not establish, continue, or enforce a law or regulation establishing a performance or other safety standard that is not identical to the federal standard." H.R.Rep. No. 338, 98th Cong., at 160, 1983 U.S.Code Cong. & Admin.News 924, 972 (as cited in 46 U.S.C., 1992 Supp. Pamphlet at 514). Furthermore, the expansive nature of the federal regulations in this area

by their own effect forecloses additional regulation by the state.

A general conflict exists between uniform federal regulation of boat safety as envisioned by the Act and state common law damages actions. If a court were to allow a jury to award damages for Defendants' alleged failure to equip their products with propeller guards, it would be tantamount to recognition of a state requirement that they be installed. Such a requirement is explicitly forbidden by the Boat Safety Act's preemption clause.[5] *Papas v. Upjohn Co.,* 926 F.2d 1019 (11th Cir.1991) (imposition of damages under state tort law is form of state regulation subject to supremacy clause); *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

Allowing a jury to conclude that Defendants' failure to provide a propeller guard constitutes a design defect would allow a jury to perform a function from which the fifty states' legislative bodies are precluded. Accordingly, the court finds that the plaintiffs' defective design claim is explicitly preempted by the Federal Boat Safety Act.

■ Plaintiffs argue, however, that even if preemption occurred, it did so on February 1, 1990, the date of the Coast Guard's letter stating its support for the National Boat Safety Advisory Council's report recommending no action on propeller guards. This argument lacks merit. The basis for preemption is not the Coast Guard's actions, but rather the underlying act itself. Congress' language and intent explicitly preempt state regulation, including damages actions, which would undermine the uniformity of the safety standards for boats. It is self-evident that where a federal law explicitly preempts a

---

5. Defendants point the court to a report by the propeller guard subcommittee of the National Boating Safety Advisory Council recommending that no action be taken to require propeller guards, and a letter written by Rear Admiral Robert T. Nelson stating the Coast Guard's adoption of that recommendation. Defendants assert that the Coast Guard's decision not to act preempts the field. Other courts have adopted this reasoning. *See Shields v. Outboard Marine Corp.,* 776 F.Supp. 1579 (M.D.Ga.1991); *Mowery v. Mercury Marine Division of Brunswick Corp.,* 773 F.Supp. 1012 (N.D.Ohio 1991). This court does not disagree that this evidence supports the

defendants' position. Whether the Coast Guard decision reflects the language of the legislative intent of Congress, however, is the central question for analysis. This court would find that this decision not to act did, in fact, reflect the policy and intent of Congress in providing uniform regulations for boat safety in the United States.

Defendants alternatively argue that even if the Act does not preempt the defective design claims, the danger posed by the engaged propeller was open and obvious and thus precluded under Georgia jurisprudence. This court does not reach this claim.

field, it does so at the time it is enacted. Chapter 43 of Title 46 of the United States Code took effect on April 15, 1984. This tort claim arose on July 16, 1989. No retroactivity issue, therefore, exists.

■ Plaintiffs also assert that the savings clause preserves all common law claims. This court does not believe that the Act's savings clause necessarily conflicts with the preemption clause. Congress likely intended to preserve common law claims which did not conflict with the goals of the Act. For instance, the savings clause would include claims for failure to meet regulatory standards and negligent operation.

■ This court recognizes, however, that the Eleventh Circuit precedent preceding *Cipollone* may not support explicit preemption. The Eleventh Circuit, in *Taylor v. General Motors Corp.,* construed similar preemption and savings clauses and found that they did not explicitly preempt the field. Congruent with this jurisprudence, this court also finds that the Boat Safety Act impliedly preempts state common law actions. *See Taylor,* 875 F.2d 816 (11th Cir.1989) (construing the National Traffic and Motor Vehicle Safety Act).

In *Taylor* the Eleventh Circuit found that interpreting a savings clause as merely allowing claims where not preempted would be a mere redundancy "since the preemption clause itself provides that when a federal standard does not govern the same aspect of performance as the state standard, the state standard is not preempted." *Id.* at 824. Since the court has the duty to give effect if possible to every clause of a statute, the *Taylor* court rejected the finding that Congress explicitly preempted the field. The *Taylor* court also relied on the fact that Congress did not make specific reference to state common law in the Act's preemption clause. *Id.* The Act could not be interpreted as unambiguously manifesting an intention to preempt the plaintiffs' common law claims. *Id.* The *Taylor* court then went on, however, to find that the Motor Vehicle Safety Act impliedly preempted the field.

In following implied preemption analysis, this court must examine whether state law would potentially frustrate the federal scheme. *Id.* at 825–26. Also, no presumption against preemption is applicable under implied preemption analysis. *Id.* at 826; *see also, Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). Preemptive intent may also be found strictly from the effect conflicts between state and federal law create. *Taylor,* 875 F.2d at 826.

As noted above, the Federal Boat Safety Act was approved to create uniform standards for manufacturers of boats and associated equipment. The legislative history stated that the Act was "to provide uniform standards without the imposition of excessive special requirements by individual states." H.R.Rep. No. 338, 98th Cong., 1st Sess., at 160, 1983 U.S.Code Cong. & Admin.News, at p. 972 (as cited in 46 U.S.C., 1992 Supp.Pamphlet at 514). Consistent with the Act, the safety regulations promulgated under the Act address capacity, engine power, flotation, electrical systems, fuel systems, ventilation, and start and gear protection requirements. 33 C.F.R. § 183.1, *et seq.* These safety standards are detailed and comprehensive covering the length and beam of recreational boats. The Coast Guard did not choose to require a propeller guard when it first issued recreational boat regulations in accordance with the Act. Thereafter, however, it chose to reexamine the issue. Lengthy study by the National Boat Safety Advisory Council reaffirmed the Coast Guard's position that propeller guards should not be mandated.[6]

6. The National Boat Safety Advisory Council appointed a subcommittee in response to a request by the Coast Guard to study available data on boating accidents involving propellers and the feasibility of some greater protection in the form of a mechanical guard. The subcommittee held three meetings at which they were shown both commercially available and experimental underwater motor housing arrangements. Following these presentations the subcommittee concluded that it had seen sufficient material to have a reasonably representative sample of data presently available on the subject. A report was drafted recommending no action be taken regarding propeller guards. The subcommittee based its recommendations on its belief that the present propeller guard technology (1) was unlikely to reduce injury; (2) could actually increase risk of injury given the size of the guards; (3) would increase boat production and operating costs; and (4) would decrease operational capabilities of boats. The report was then trans-

Plaintiffs do not argue that Defendants did not comply with the boating safety regulations in effect at the time the boat was built. Rather, they allege that the boat was defective because Defendants did not choose to install a propeller guard. The Supreme Court has held that a state common law rule cannot take away the flexibility provided by federal regulation and cannot prohibit the exercise of a federally granted option. *de la Cuesta, supra.* Allowing a jury to find a design defect for failure to install a propeller guard would, in effect, remove the choice allowed by the present rule. Manufacturers are allowed to weigh the positive and negative effects of mechanical guards in the manufacture of their boats. Allowing common law damages claims would frustrate uniform regulation. As discussed before, it would allow juries to do what state legislatures cannot.

The Coast Guard's later decision to reaffirm no regulation mandating propeller guards does not create a retroactivity issue. Flexibility was built into the Act when it was first passed. To allow a state common law claim for the same rule which existed prior to the Coast Guard's action as after would be illogical and contrary to the implied intent of the Boat Safety Act. This court finds, therefore, that plaintiffs' design defect theories are impliedly preempted by the Federal Boat Safety Act and the Coast Guard's decision not to mandate propeller guards.

### C. *Express and Implied Warranties*

Defendants ask for summary judgment contending that Plaintiffs' claim for breach of express and implied warranties is barred by the applicable statute of limitations period and by the fact that no privity of contract existed between the plaintiffs and Galaxy or Mercury. Plaintiffs have not contested this issue in their responses.

■ Under Georgia law third-party beneficiaries may only take advantage of express

or implied warranties in contract if they are a member of the family or household or guest of the person who bought the item from the manufacturer or retailer if it may reasonably be anticipated that such a third party would use or be affected by the breach of the warranty. O.C.G.A. § 11–2–318. This rule, based on both negligence and strict liability, narrowly limits the applicability of warranties. *Ellis v. Rich's, Inc.*, 233 Ga. 573, 577–78, 212 S.E.2d 373 (1975); *Weatherby v. Honda Motor Corp.*, 195 Ga.App. 169, 173–74, 393 S.E.2d 64 (1990). Since Plaintiffs bought the boat from another consumer, who in turn had purchased it from the original buyer who was in privity with Galaxy and Mercury, Plaintiffs have not met the required exceptions of § 11–2–318.

■ The applicable statute of limitations mandates the filing of an action within four years from the date when the claim arose. Unlike torts, claims arise under the Georgia Commercial Code when tender of the product to the buyer was made. O.C.G.A. § 11–2–725. In this case delivery was originally made to Jack Thompson in 1981. The case was filed on July 15, 1991. The four-year limitation period has not been met.

### D. *Additional Considerations*

Defendant Mercury asks the court for summary judgment on claims involving the steering mechanism in the boat, arguing that the only evidence in issue is that of Alvin Ruth, President of Galaxy. Ruth's deposition testimony is that Galaxy did not use Mercury steering mechanisms in its boats. This court finds nothing in the record to dispute Defendant's contention. This issue, however, was not addressed by Defendants in their original motion for summary judgment, nor by Plaintiffs in their response. The court will not decide this issue without more comment from the parties.[7]

---

mitted to the Coast Guard. The letter noted above came after the Coast Guard's review of the subcommittee's recommendations.

**7.** Defendant Mercury also contends in a throwaway line at the end of its reply brief that Plain-

tiffs' "kill switch" claim is directed only against Galaxy. The paragraph of the complaint is not so conclusive. Proper briefing is necessary to address these kinds of issues.

## IV.  CONCLUSION

In light of the foregoing discussion, the court finds as follows:  Defendants' motions for reconsideration are DENIED [42–1, 43–1].  Defendant Mercury's motion for leave to file a brief in excess of the page limitation is GRANTED [21–1].  Defendant Mercury's two motions for leave to file supplemental memoranda are GRANTED [47–1, 48–1].  Plaintiffs' motion for leave to file a supplemental memorandum in response is GRANTED [50–1].  Plaintiffs' motion for leave to file a brief in excess of the page limitation in response to Defendants' motion for summary judgment is GRANTED [33–1].  Defendants' motions for partial summary judgment are GRANTED IN PART and DENIED IN PART [22–1, 22–2, 23–1, 23–2].  A material dispute exists as to whether Plaintiffs' strict liability and negligence claims are barred by the statute of repose.  Plaintiffs' prop-related claims are preempted.  Plaintiffs' claims for breach of express and implied warranties are barred and meritless.

SO ORDERED.

### ORDER ON MOTIONS TO CLARIFY AND RECONSIDER

This matter is before the court on various motions.  In essence, Defendants Brunswick Corporation, doing business as Mercury Marine Division, and Galaxy Boat Manufacturing Company, Inc., doing business as Galaxy Boats, ask the court to clarify its previous order on the issue of preemption as to Plaintiffs Polly Sutton Davis and Ed Davis's failure to warn claim, reconsider its finding of a factual dispute on the question of the Georgia statute of repose, and determine whether any claims relating to the lack of a kill switch and steering mechanisms in the boat are directed at Brunswick.

## I.  UNDISPUTED FACTS

On July 16, 1989, Plaintiff Polly Davis was struck while swimming in Lake Oconee by a boat driven by her mother-in-law, Edna Davis.  The boat was manufactured by Galaxy and equipped with an engine and out-drive manufactured by Mercury Marine.  The steering mechanism installed on the boat was not manufactured by Mercury Marine.

Plaintiffs had bought the boat used from a private owner.  Mercury sold Galaxy the engine and out-drive in question on June 9, 1981.  The engine and out-drive were shipped from Mercury Marine's production facility in Stillwater, Oklahoma, to Mercury's plant in Columbia, South Carolina.  The engine and out-drive arrived at Galaxy's plant for installation two or three days later.  Galaxy's President, Alvin R. Roof, states that the engine and out-drives were installed in the boat hulls between one and four days after they arrived at the plant.  He further testifies that all 1981 model Galaxy boats were sold prior to July 4, 1981, but admits that he does not have an exact recollection of the actual delivery to Jack Thompson, the first purchaser of the boat in question.  Barbara Coughlin, the clerk principal for the Georgia Department of Natural Resources Boat Registration and Licensing Unit, states that she does not know personally, nor do the registration records reflect, when the boat was purchased, but that the records show unequivocally that the boat was registered in July of 1981.

## II.  LEGAL DISCUSSION

### A.  *Preemption and Failure to Warn*

Galaxy moves the court to reconsider its order of March 26, 1993, and clarify whether Defendants' failure to warn of the danger of the propeller is preempted by the Federal Boat Safety Act, 46 U.S.C. § 4306.  As this court found in its previous order, this Act prohibits states from establishing, continuing or enforcing any performance or safety standard that is not identical to the federal standard.  The court, therefore, found that the claims for design defects and failure to install a propeller guard were preempted.  A failure to warn claim is indistinguishable from a design defect claim for purposes of this analysis.  *See Pepper v. Selig Chemical Industries,* 161 Ga.App. 548, 550, 288 S.E.2d 693 (1982) (manufacturer's failure to warn of the dangers in using a product may constitute a design defect for purposes of strict liability).  If this court were to allow a jury to award damages for Defendants' failure to warn boat passengers of the dangers of the

propeller, it would be tantamount to a state requirement that explicit warnings be given. Such an explicit warning would be over and beyond requirements specified by the federal government. By leaving the issue of propeller guards and propellers explicitly unregulated, the federal government has appropriated the field. *Williams v. United States Department of Transportation,* 781 F.2d 1573, 1577 (11th Cir.1986) (Act preempts state boat and safety equipment standards); *Shields v. Outboard Marine Corp.,* 776 F.Supp. 1579, 1581 (M.D.Ga.1991) (citing among others *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 178, 98 S.Ct. 988, 1004–05, 55 L.Ed.2d 179 (1978)). Plaintiffs' failure to warn claims, therefore, are preempted.

### B. Statute of Repose

Brunswick moves the court to reconsider its previous finding that a genuine issue of material fact exists as to whether the boat was sold to Jack Thompson before July 15, 1981, thereby precluding summary judgment on Plaintiffs' claims under the Georgia statute of repose, O.C.G.A. § 51–1–11.[1] Brunswick further contends that the court's interpretation of the words "use and consumption" under § 51–1–11(b)(2) to mean when the product is first purchased by a consumer is in error.

■ Upon further review of the affidavits and depositions of Alvin R. Roof, President of Galaxy, and Barbara Coughlin, the court must reconsider its previous finding of a material dispute. Alvin Roof testifies that all 1981 model Galaxy boats were sold prior to July 4, 1981, and that he cannot specifically remember when Jack Thompson actually picked up the boat in question. Barbara Coughlin admits that she does not know, and the Georgia boat registration records do not

indicate, when the purchase was actually made. She interprets the registration records as indicating that the boat was in fact registered in July, 1981, however. While it is true, as the court previously stated, that none of this evidence is completely conclusive, this court was incorrect in deeming such possible uncertainty as sufficient to constitute competent evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). While it is true that Mr. Roof is unable to say exactly when Jack Thompson purchased the boat, he is certain that all 1981 model Galaxy boats had been sold by July 4, 1981. The uncertainty as to the boat's registration, therefore, is irrelevant. Plaintiffs have not provided any evidence to contradict Mr. Roof's assertions. Without such evidence, Plaintiffs as non-movants have not met their burden of production. The mere existence of an uncertainty as to the exact date, when no evidence would place it after July 15, 1991, therefore, is insufficient to prevent summary judgment on the issue of the statute of repose. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ Alternatively, as to the question of whether the phrase "use or consumption" in § 51–1–11(b)(2) means that the statute of repose begins to. run when the product first enters the stream of commerce versus when it is first sold to the consumer, Georgia courts have not directly addressed the issue. While Brunswick points to *McElroy v. Firestone Tire & Rubber Co.,* 894 F.2d 1504, 1506 (11th Cir.1990), this court does not find it helpful since it discusses a Florida statute of repose using different language.[2] As the *McElroy* panel itself noted, "reliance on a

---

1. Plaintiffs have moved to strike a portion of Galaxy's response to Brunswick's motion for reconsideration and supplemental motion for summary judgment, arguing that Galaxy did not move to reconsider within ten days of entry of the court's previous order·as required under Local Rule 220–6. What Plaintiffs fail to acknowledge is that Galaxy merely voices its support for Brunswick's arguments on the question of the statute of repose. Galaxy has not actually moved for reconsideration itself. No timing issue, therefore, exists.

2. The Florida statute of repose provides that "[a]ctions for products liability ... under [Florida statute annotated section] 95.11(3) must be begun ... within twelve years after the date of delivery of the completed product to its original purchaser ... regardless of the date the defect in the product ... was or should have been discovered."

non-Florida case or statutory law is ultimately of little use in view of the divergent language of the various statutes."[3]  *Thorpe v. Robert F. Bullock, Inc.*, 179 Ga.App. 867, 868–70, 348 S.E.2d 55 (1986), however, holds that for purposes of § 51–1–11(b)(1), liability for the manufacturer begins when the article is placed in the stream of commerce. Thus, in *Thorpe*, when the plaintiff was injured by a deep fryer which had merely been placed for a trial use and not been sold to the restaurant, the court found nonetheless that it had been "offered for sale or lease, or otherwise marketed or placed in the stream of commerce," and that therefore the manufacturer could be held liable. *Id.* at 872, 348 S.E.2d 55. It is only logical, then, that the commencing of the manufacturer's liability for injuries caused by a product at the same time would trigger the statute of repose which ten years later ends the manufacturer's liability. As such, the June 9, 1981 sale of the engine and out-drive to Galaxy would be the date the products were placed in the stream of commerce, exposing Brunswick to liability. Under this reasoning, any dispute as to Jack Thompson is rendered irrelevant.[4]

### C. Kill Switch and Steering Mechanism Claims

■ Brunswick moves for summary judgment on the kill switch and steering mechanism claims, contending, first, that these claims were not directed against Brunswick and, second, that even if they are, it is uncontroverted that Brunswick did not manufacture the steering mechanism installed in the boat in question, and that therefore summary judgment is appropriate.[5]

Brunswick is correct in contending that paragraph ten of the complaint, which lists the defective conditions created by Brunswick, does not mention steering mechanisms or the lack of a kill switch whereas paragraph thirteen, which lists the defective conditions created by Galaxy, addresses the steering mechanism and the propensities of the craft and the lack of a kill switch. A fair reading of the complaint can yield only the conclusion that Plaintiffs intended that these claims be directed against Galaxy. Plaintiffs do not argue that the equipment by itself was defective; rather, Plaintiffs argue that the wrong equipment was installed on the boat. The court's reading of the complaint, therefore, is logical since presumably a failure to install the proper steering mechanism or a kill switch could only be directed at the party who installed the equipment. This court, therefore, under its discretionary authority found in *Federal Rule of Civil Procedure* 16 to formulate and simplify the issues for trial, finds that the steering and kill switch claims are directed only at Galaxy.

It is further uncontroverted that Brunswick did not manufacture the steering mechanisms found in the boat. While Plaintiffs

---

3. O.C.G.A. § 51–1–11 provides in pertinent part:

(b)(1) The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.
(2) No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury.

4. Plaintiffs point to language in O.C.G.A. § 51–1–11(c), which states, "[n]othing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from the use of a product once that danger becomes known to the manufacturer" as removing the failure to warn claim from coverage by the statute of repose. As the failure to warn claims are preempted, this court need not address the meaning of this yet uninterpreted portion of § 51–1–11.

5. Brunswick, in its reply on this motion, raises a further argument that the kill switch claim is precluded under the Georgia open and obvious rule. Plaintiffs have moved to strike that portion of the reply brief which raises the issue because it was not raised in the original supplemental motion for summary judgment. While Plaintiffs are incorrect in asserting that Brunswick's reply raised new issues as related to the steering mechanism claims, Plaintiffs are correct in arguing that Brunswick's discussion of the open and obvious rule as it relates to the kill switch claim was inappropriately raised for the first time in reply. As such, the court does not consider the kill switch issue on the question of the open and obvious rule.

argue that the steering mechanisms are linked to the engine and out-drive and that, therefore, the engine and out-drive affect the steering, the complaint in theory of this case is that the steering assembly, in other words, such parts as the steering wheel and cables, were inadequate to allow Edna Davis to turn the boat to avoid Polly Sutton. Since Brunswick did not manufacture the steering assembly, only the installer, Galaxy, is possibly liable for any inadequacy.

## III. CONCLUSION

In light of the foregoing discussion, the court finds as follows: Galaxy's motion for reconsideration [64–1] is GRANTED IN PART and DENIED IN PART. The failure to warn claim is preempted. Brunswick's motion for reconsideration of the issue of the statute of repose is GRANTED [67–1]. Brunswick's motion for leave to supplement authority in support of its motion for reconsideration is GRANTED [89–1] and was considered. All claims against Brunswick as to the engine and out-drive, therefore, are barred. Alternatively, Brunswick's supplemental motion for summary judgment is also GRANTED [68–1, 69–1] as to all issues except those pertaining to the open and obvious rule. Plaintiffs' motion to strike a portion of Galaxy's response to Brunswick's supplemental motion for summary judgment is DENIED [81–1]. Plaintiffs' motion to strike a portion of Brunswick's reply in support of their supplemental motion for summary judgment is GRANTED [82–1]. Only claims against Galaxy remain in this case. The Clerk of Court is DIRECTED, therefore, to DISMISS Brunswick Corporation, doing business as Mercury Marine Division, as a party defendant in this case.

SO ORDERED.