**Emily MOSS, Plaintiff,**

v.

**OUTBOARD MARINE CORPORATION, a corporation; Harris–Kayot, Inc., a corporation, Defendants.**

**Civ. No. S–95–1507 WBS/GGH.**

United States District Court, E.D. California.

Jan. 16, 1996.

Ronald H. Wecht, Walkup, Melodia, Kelly & Echeverria, San Francisco, CA, for plaintiff Emily Moss.

John P. Hallissy, Sacino, Bertolino & Hallissy, Sacramento, CA, Marsha M. Kull, Bowman and Brooke, Minneapolis, MN, for defendant Outboard Marine Corp.

Maynard C. Craig, Craig and Shepherd, Chico, CA, for defendant Harris–Kayot.

### *MEMORANDUM AND ORDER*

SHUBB, District Judge.

Before the court is defendant Outboard Marine Corporation's motion for summary judgment, or in the alternative, partial summary judgment of the claims in plaintiff's complaint. Fed.Rule Civ.P. 56. For the reasons discussed below, there is no issue of material fact for trial, and defendant is entitled to judgment as a matter of law.

### BACKGROUND

This product liability action arises out of a boating accident which occurred on August 6, 1993, on Lake Almanor, California. Plaintiff Emily Moss allegedly sustained emotional distress after her sister, Jaime, fell into the water from the front deck of a pontoon boat and was struck by the blades of the propeller causing severe physical injuries. Plaintiff's complaint names as defendants Outboard Marine Corporation ("OMC"), the manufacturer of the outboard motor and propeller, and Harris–Kayot, Inc., the manufacturer of the pontoon boat.

Plaintiff's complaint alleges causes of action in negligence and strict liability. Specifically, as against OMC, the complaint alleges that (1) the boat and its motor were defective in design because the boat contained a motor with unguarded propeller blades, thereby presenting an unreasonable risk of injury, and (2) OMC failed to warn of the extreme risk presented by the unguarded propeller blades. Hallissy Decl., Ex. A, attached thereto, Compl. ¶ 13.

1. Rulemaking authority under the FBSA related to recreational vessels has been delegated to the United States Coast Guard by the Secretary of Transportation. *See* 46 U.S.C. § 4303(a); H.R.Rep. No. 338, 98th Cong., 1st Sess. 122–23

### DISCUSSION

OMC moves for summary judgment against plaintiff on the ground that federal preemption, based upon the preemption clause of the Federal Boat Safety Act of 1971 ("FBSA"), 46 U.S.C. §§ 4301 *et. seq.*, precludes her claims. In opposition, plaintiff argues that the FBSA preemption clause, 46 U.S.C. § 4306, does not expressly preempt her common law claims and that its savings clause, 46 U.S.C. § 4311(g), specifically preserves them. The court disagrees.

The FBSA preemption clause expressly evinces the intent of Congress to preempt state laws or regulations that are not identical to a regulation promulgated under the Act:

> Unless permitted by the Secretary under Section 4305 of this title, a State or political subdivision of a State may not establish, continue in effect, or enforce a law or regulation establishing a recreational vessel or associated equipment performance or other safety standard or imposing a requirement for associated equipment ... that is not identical to a regulation prescribed under section 4302 of this title.

46 U.S.C. § 4306. The purpose of the FBSA's preemption clause "is to standardize regulations applicable to the manufacture of boats by precluding states from adopting requirements that conflict with federal standards." *Mowery v. Mercury Marine,* 773 F.Supp. 1012, 1014 (N.D.Ohio 1991) (citing *Rubin v. Brutus Corp.,* 487 So.2d 360, 363 (1986)).

The United States Coast Guard has exclusive rulemaking authority under the FBSA for establishing safety regulations in recreational vessels.[1] Pursuant to this authority, the Coast Guard adopted the recommendation of the National Boating Safety Advisory Council ("NBSAC") that the "U.S. Coast Guard should take no regulatory action to require propeller guards," and took the official position that "[a]vailable propeller guard accident data do not support imposi-

(1983), reprinted in 1983 U.S.C.C.A.N. 924, 934–35; H.R.Rep. No. 154, 100th Cong., 2d Sess. 9 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2361, 2363.

tion of a regulation requiring propeller guards on motorboats." Hallissy Decl. Ex. B, attached thereto, Letter from Robert T. Nelson, Rear Admiral, U.S. Coast Guard, Chief, Office of Navigation, Safety and Waterway Services (Feb. 1, 1990). In so doing, the Coast Guard noted that a propeller guard fitting all types of boats was not then feasible and that the cost of retrofitting millions of boats was a major economic consideration. *Id.*

■ The determination by the Coast Guard not to regulate the installation of propeller guards has the same preemptive force as a decision to regulate. *See Arkansas Electric Cooperative Corp. v. Arkansas Public Service Com'n,* 461 U.S. 375, 384, 103 S.Ct. 1905, 1912, 76 L.Ed.2d 1 (1983) ("[A] federal decision to forgo regulation in a given area may imply an authoritative federal determination that the area is best left unregulated and in that event would have as much preemptive force as a decision to regulate"). Therefore, in the absence of a federal requirement, manufacturers are given the choice whether or not to install propeller guards on recreational boats. Any state requirement compelling them to do so would be preempted under the FBSA. *See Carstensen v. Brunswick Corp.,* 49 F.3d 430, 431 (8th Cir.1995) ("[a]ny state law or regulation requiring manufacturers to install propeller guards would not be identical to the Coast Guard regulatory position").

■ While plaintiff is correct that the FBSA preemption clause does not specifically refer to common law actions, the broad language of that clause suggests no distinction between its effect over positive state enactments and state common law. Moreover, as the Supreme Court explained in *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), " '[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.' "

*Id.* at 521 (quoting *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959)). The *Cipollone* Court went on to hold that the preemption clause contained in 1969 Public Health Cigarette Smoking Act, 15 U.S.C. § 1334(b), preempted not only legislative and regulatory enactments, but also state common law claims. *Id.* at 521–24. Similarly, allowing a jury to assess damages for failure to provide a propeller guard here would, in effect, create a state regulation that guards be installed. Such a requirement would not be identical to any prescribed under the FBSA and is therefore forbidden by FBSA's preemption clause.

As a result, plaintiff's common law design defect claims are preempted by section 4306 of the FBSA. *See, e.g., Carstensen,* 49 F.3d at 432 (common law design defect claims based upon the absence of a propeller guard are preempted by FBSA preemption clause); *Shield v. Bayliner Marine Co.,* 822 F.Supp. 81, 84 (D.Conn.1993) (same); *Davis v. Brunswick Corp.,* 854 F.Supp. 1574, 1580–82 (N.D.Ga.1993) (same); *Shields v. Outboard Marine Corp.,* 776 F.Supp. 1579, 1581 (M.D.Ga.1991) (same); *Mowery,* 773 F.Supp. at 1017 (same). Plaintiff's common law failure to warn claim is also preempted under this analysis. *See, e.g., Davis v. Brunswick,* 854 F.Supp. 1574, 1583–84 (N.D.Ga.1993) ("By leaving the issue of propeller guards and propellers explicitly unregulated, the federal government has appropriated the field ... plaintiffs' failure to warn claims, therefore, are preempted"); *Ryan v. Brunswick,* 209 Mich.App. 519, 531 N.W.2d 793, 796 (1995) (same).[2]

■ Nonetheless, plaintiff argues that FBSA's savings clause alters the preemption analysis and allows her to assert her claims under state common law. The savings clause, which preserves certain state common law causes of action, provides:

> Compliance with this chapter or standards, regulations, or orders prescribed under

---

**2.** *Moore v. Brunswick Bowling & Billiards Corp.,* 889 S.W.2d 246 (Tex.1994), is the only case to reach a contrary conclusion. However, *Moore's* rationale was properly rejected in *Carstensen,* 49 F.3d at 433.

this chapter does not relieve a person from liability at common law or under State law. 46 U.S.C. § 4311(g). This clause, however, should not be read to save those common law rights, "the continued existence of which would be absolutely inconsistent with the provisions of the act." *Texas & Pac. Ry. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 446, 27 S.Ct. 350, 358, 51 L.Ed. 553 (1907).

 The stated purpose of FBSA's savings clause is "to assure that in a product liability suit mere compliance by a manufacturer with the minimum standards promulgated under the Act will not be a complete defense to liability." S.Rep. No. 248, 92d Cong., 1st Sess., *reprinted in* 1971 U.S.C.C.A.N. 1333, 1352. This provision has been interpreted to prevent a manufacturer from relying on its compliance with the minimum safety standards set forth in the FBSA as a defense to state common law claims that it *actually installed* defectively designed products. *See e.g., Mulhern v. Outboard Marine Corp.,* 146 Wis.2d 604, 432 N.W.2d 130 (Wis.Ct.App.1988) (claims based on defective throttle not preempted by FBSA); *Rubin v. Brutus Corp.,* 487 So.2d 360 (Fla. Dist.Ct.App.1986) (claims based on defective seat not preempted by FBSA). For example, in this case if OMC had installed a defectively designed propeller guard, OMC would be precluded from using the FBSA preemption clause as a defense. The savings clause has no application, however, where, as here, the FBSA does not require a manufacturer to install a device and that manufacturer chooses not to install the device. *Carstensen,* 49 F.3d at 432–33; *Shields,* 776 F.Supp. at 1581–82.

Nothing in *Kennedy v. Collagen Corp.,* 67 F.3d 1453 (9th Cir.1995) alters this conclusion. In order to determine whether the Medical Devices Act ("MDA") preempted common law claims, the court looked to the Food and Drug Administration's ("FDA") interpretation of the MDA. The court held that it

> must look to the FDA's understanding of the scope of the MDA's statutory preemption provision since the FDA is the agency charged by Congress with implementing the MDA. An agency's interpretation of

its own statute is controlling so long as not contrary to Congress' intent.

*Id.* at 1457. The FDA's regulations specifically stated, *inter alia,* that the MDA "does not preempt State or local requirements of general applicability . . . ." 21 C.F.R. § 808.1(d), quoted at 67 F.3d 1453. The court found that state common law was a requirement of "general applicability," and thus was not preempted by the MDA or its implementing regulations.

The *Kennedy* court did not rely on the operative language in the MDA itself, but instead upon the FDA's implementing regulations. Because there are no regulations promulgated by the Coast Guard interpreting the FBSA's preemptive provision, the reasoning employed by the *Kennedy* court has no application here. Further, Congress' intent to preempt state boat equipment requirements except where they are parallel to federal regulations is indicated in the FBSA's legislative history:

*Section 10. Federal Preemption*

This section provides for federal preemption in the issuance of boat and equipment safety standards. This conforms to the long history of preemption in maritime safety matters and is founded on the need for uniformity applicable to vessels moving in interstate commerce. In this case it also assures that manufacture for the domestic trade will not involve compliance with widely varying local regulations . . .

This section does not preempt state law or regulation directed at safe boat operation and use, which was felt to be appropriately within the purview of state or local concern.

S.Rep. No. 248, 92d Cong., 1st Sess., *reprinted in* 1971 U.S.Code Cong.Admin.News 1333, 1341.

Accordingly, plaintiff's propeller guard claims are preempted by the FBSA's preemption clause and are not preserved by the FBSA's savings clause.

IT IS THEREFORE ORDERED that defendant Outboard Marine Corporation's mo-

tion for summary judgment be, and hereby is, GRANTED.