Cecile M. LESCS, Plaintiff,

v.

DOW CHEMICAL COMPANY, William R. Hughes, and William R. Hughes, Inc., Defendants.

Civil Action No. 94–0091–C.

United States District Court, W.D. Virginia, Charlottesville Division.

Aug. 8, 1997.

Cecile M. Lescs, pro se.

Elizabeth Burkhart, Houston, TX, Benton Musselwhite, Houston, TX, for Plaintiff.

Henry Edmund Coleman, III, Bryan & Coleman, PLC, Winchester, VA, Louis C. Woolf, Woolf, McClane, Bright, Allen & Carpenter, Knoxville, TN, Dean T. Barnhard, Barnes & Thornburg, Indianapolis, IN, for Defendants.

### MEMORANDUM OPINION

TURK, District Judge.

Plaintiff brings this action under Virginia law for negligence, breach of contract and misrepresentation, with diversity jurisdiction vested in this court pursuant to 28 U.S.C. § 1332. Plaintiff names William R. Hughes, Inc., and William R. Hughes (collectively "Hughes"), and Dow Chemical Company ("Dow") as Defendants. Plaintiff is a domiciliary of West Virginia. The Hughes Defendants are domiciliaries of Virginia; Dow is a Delaware corporation. Plaintiff seeks compensatory and punitive damages in excess of the statutory requirements for diversity.

Accordingly, diversity jurisdiction is proper in this case.

This matter is before the court on Defendants' motions for federal preemption and for summary judgment. These motions have been briefed extensively and argued before the court on more than one occasion during the course of this lawsuit. Accordingly, those motions are ripe for disposition. Upon careful consideration of the record, the applicable law, the briefs submitted by the parties, and the arguments of counsel at hearings held by this court, the court finds that it must grant Defendants' motion for preemption, grant Dow's motion for summary judgment and grant in part and deny in part Hughes' motion for summary judgment.

## I. Background

This case involves alleged personal injury stemming from the 1988 termite treatment of Plaintiff's house. On September 27, 1988, Plaintiff signed a contract with the estate of Sylvester N. Reed to purchase a home in Winchester, Virginia. The Reed estate contracted Hughes' extermination services in connection with the closing on the house. On November 21, 1988, Hughes treated the home for termites and other insects. Part of the treatment involved injecting the insecticide known as "Dursban TC" ("Dursban"), which is manufactured by Dow, into the floor of the basement and into the exterior walls of the house.

On November 23, 1988, Plaintiff conducted a walk-through of the residence, at which time she alleges that "the residence was filled with a noxious odor and toxic fumes." On that same day Plaintiff closed on the house. During the period from November 24, 1988, through January 25, 1989, Plaintiff visited the residence on a regular basis to clean and to perform minor repairs.

Plaintiff moved into her new home on January 25, 1989. Plaintiff alleges that she suffered "acute and chronic effects ... [including] ... neurologic, pulmonary, respiratory, hematologic, immune, gastrointestinal, dermal, emotional, and mental effects" from exposure to Dursban in her home. On April 14, 1989, Plaintiff moved out of the house permanently.

On November 20, 1990, Plaintiff filed two civil suits in connection with her alleged injuries. The first lawsuit, filed in federal court, was dismissed on April 19, 1991, for failure to effect timely service pursuant to Federal Rule of Civil Procedure 4(j). The second action was filed in the Circuit Court for the City of Winchester Virginia, and involved the same claims against some of the same Defendants. On June 6, 1994, Plaintiff took a voluntary non-suit of her state court action. On December 5, 1994, Plaintiff filed this action in the United States District Court for the Western District of Virginia, Harrisonburg Division.

In Plaintiff's lawsuit, she has sued Hughes for negligence, intentional or negligent misrepresentation, breach of contract, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose. Additionally, Plaintiff has sued Dow for negligence, intentional or negligent misrepresentation, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose.[1]

## II. Standard for Summary Judgment

On a motion for summary judgment, the court must view the facts, and the inferences to be drawn in light of those facts, in the light most favorable to the party opposing the motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355 (4th Cir.1985). Summary judgment is proper where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). However, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby,*

---

1. By Order dated June 5, 1995, the court dismissed with prejudice all of Plaintiff's claims against Dowelanco, Tenneco, Inc., Tenneco Oil Company, and Exxon Corporation. These parties were dismissed from the case at that time.

*Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### III. Preemption

Defendants allege that several of Plaintiff's claims are preempted by the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.* (West 1997). Specifically, Defendants allege that the following claims are preempted: (1) negligent failure to warn and negligent failure to instruct Hughes as to proper application of Dursban, (2) breach of the implied warranty of merchantability (in part), and (3) misrepresentation.

■■■ FIFRA "preempt[s] conflicting state law causes of action that impose a duty to provide a warning in addition to or different from federally established labeling requirements." *Worm v. American Cyanamid Co.*, 5 F.3d 744, 745 (4th Cir.1993) ("*Worm II* "). The Fourth Circuit has on a number of occasions construed the preemptive scope of FIFRA as set forth in 7 U.S.C. § 136v(b). Section 136v(b) provides that a state may not "impose or continue in effect any requirements for labeling or packaging [insecticides] in addition to or different from those required under this chapter." The "language of § 136v(b) manifestly ordains the preemption of the establishment or enforcement of any common law duty that would impose a labeling requirement inconsistent with those established by FIFRA." *Worm v. American Cyanamid Co.*, 970 F.2d 1301, 1308 (4th Cir. 1992) ("*Worm I* "). If to comply with state law a manufacturer must violate federal law, the state law must yield. *Worm II*, 5 F.3d at 747.

■■ Furthermore, state law is preempted "if in complying with it, [a manufacturer] would be frustrating the objectives and purposes of federal law." *Id.* The *Worm I* court found that the objectives and purposes of FIFRA include the strengthening of federal standards, increasing EPA authority for their enforcement, and the establishment of a comprehensive and uniform regulation of the labeling, sale, and use of pesticides. *Worm I*, 970 F.2d at 1306.

FIFRA establishes a detailed process of review by the EPA of insecticides such as Dursban, culminating in the approval of a label under which a product may be marketed. *Worm II*, 5 F.3d at 747. "Given the comprehensive nature of the FIFRA labeling process, it is apparent that § 136v(b), prohibiting any state requirement in addition to or different from the federal requirements, dictates the preemption of any state common law cause of action that rests on an alleged failure to warn or communicate information about a product through its labeling." *Id.*

Pursuant to the FIFRA scheme for approval of insecticides, the EPA registered Dursban and assigned the insecticide the registration number 464–562 on February 12, 1981. (Affidavit of Jeffrey D. Pinkham, Ph. D., 6/2/93 (("Pinkham Affidavit")) at 2). As part of the registration process, the EPA determined that the toxological data submitted by Dow complied with the requirements of FIFRA. (*Id.*) As a further part of the registration process, Dow received from the EPA a stamped and approved label for Dursban. (*Id.*) The Dursban label which was in effect at the time of the alleged injuries in this case was approved by the EPA on February 13, 1986. (*Id.*) The Dursban label was affixed to the product at the time of sale, and Dursban was only sold to sophisticated users such as exterminators, never to the general public. (*Id.*)

### A. Negligence

Defendants allege that FIFRA preempts Plaintiff's claims against Defendants for negligent failure to warn and against Dow for negligent failure to instruct Hughes as to proper application of Dursban. As set forth above, 7 U.S.C. § 136v(b) dictates the preemption of any state common law cause of action that rests on an alleged failure to warn or communicate information about a product through its labeling. *Worm II*, 5 F.3d at 747.

■■ Plaintiff's claim for negligent failure to warn is preempted by FIFRA. *Worm II*, 5 F.3d at 748, *Papas v. Upjohn Co.*, 985 F.2d 516, 519 (11th Cir.1993) ("If a pesticide manufacturer places EPA-approved warnings on the label and packaging of its product, its duty to warn is satisfied and the adequate warning issue ends.") In this case, the un-

contradicted evidence shows that Dow placed its EPA-approved label for Dursban on the product. (Pinkham Affidavit, 6/2/93 at 2). Nor is there any evidence that Dow ever made any claims outside of the label such that it could be held liable for breach of a "FIFRA-created duty...." *See. e.g., Lowe v. Sporicidin International,* 47 F.3d 124, 130 (4th Cir.1995). The court will grant Defendants summary judgment as to Plaintiff's claim for negligent failure to warn.

■ Plaintiff's claim for negligent failure to instruct Hughes as to the proper application of Dursban is also preempted. The EPA-approved label for Dursban contains detailed instructions on the proper application of the insecticide. (Dursban TC Label, Exhibit A to Pinkham Affidavit). Accordingly, Plaintiff's claim for negligent failure to instruct must rest chiefly on the failure of the warning label to adequately set forth instructions to end users. The Fourth Circuit has found that FIFRA preempts claims based on the alleged failure to warn or communicate information about a product through its labeling. *Worm II,* 5 F.3d at 747. Because this claim relates closely to the EPA-approved labeling for Dursban, the court is of the opinion that Plaintiff's negligent claim for negligent failure to train or instruct Hughes is preempted by FIFRA. *See, e.g., Pitts v. Dow Chemical Co.,* 859 F.Supp. 543 (M.D.Ala.1994).

### B. Implied Warranty of Merchantability

Defendants allege that FIFRA partially preempts Plaintiff's claim against Dow for breach of the implied warranty of merchantability. Defendants further claim that to the extent that Plaintiff's claim for breach of the implied warranty of merchantability is not preempted, Defendants are entitled to summary judgment on the merits of the claim.

■ In order for a Plaintiff to recover under a breach of implied warranty theory for the manufacture of an unreasonably dangerous product, a Plaintiff must show:

(1) that the goods were unreasonably dangerous for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the manufacturer's hands.

*Morgen Industries Inc. v. Vaughan,* 252 Va. 60, 471 S.E.2d 489, 492 (1996); *Logan v. Montgomery Ward & Co. Inc.,* 216 Va. 425, 219 S.E.2d 685, 687 (1975). For a product to be unreasonably dangerous it must be "defective in assembly or manufacture, unreasonably dangerous in design, or unaccompanied by adequate warnings concerning the hazardous properties." *Morgen,* 471 S.E.2d at 492, *citing Austin v. Clark Equip. Co.,* 48 F.3d 833, 836 (4th Cir.1995); *Bly v. Otis Elevator Co.,* 713 F.2d 1040, 1043 (4th Cir. 1983). As set forth herein, the court finds that Plaintiff's claims of unreasonably dangerous design are either preempted or fail based on an utter lack of admissible evidence brought forth by Plaintiff.[2] Accordingly, the court will grant Defendants' motion for sum-

---

**2.** Additionally, Defendants are entitled to summary judgment because Plaintiff has not produced sufficient evidence of an alternative design which would have made Dursban safe. To prove breach of the implied warranty of merchantability under Virginia law, Plaintiffs must produce evidence of a suitable alternative design to a product which is technically feasible and desirable. *Lemons v. Ryder Truck Rental, Inc.,* 906 F.Supp. 328, 334 (W.D.Va.1995).

In this case, Plaintiff has only produced the evidence of Steven Tvedten, who testified at deposition that Hughes could have used sodium borate and habitat reduction in lieu of using Dursban to treat the house. However, Mr. Tvedten did not testify as to the relative effectiveness or economy of using sodium borate and habitat reduction instead of Dursban. In fact, Mr. Tved-

ten testified that in 1988, when Dursban was applied to Ms. Lescs' home, he too used Dursban on residences. The court finds that there is not enough evidence of alternative design for a triable issue to remain as to breach of the implied warranty of merchantability. To the extent that Plaintiff seeks to rely on Mr. Tvedten's affidavit dated July 29, 1997, the court finds this affidavit to be inconsistent with his prior deposition testimony; accordingly, the court will disregard the affidavit. *Mack v. United States,* 814 F.2d 120, 125 (2d Cir.1987); *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 893 (5th Cir.1980). Even if the court did not grant Defendant's motion on the reasoning set forth in this section, the court would nonetheless grant the motion based on Plaintiff's failure of proof of a feasible alternative design.

mary judgment as to this claim.[3]

### 1. Defective Manufacture

■ Plaintiff has not alleged that the Dursban applied to her house was unreasonably dangerous in that it was defective in assembly or manufacture. In fact, Plaintiff has contended throughout this litigation that Dursban as it is properly formulated by Dow is a dangerous chemical which should be removed from the market. Accordingly, the court concludes that the Dursban applied to Plaintiff's home was not unreasonably dangerous in that it was defectively manufactured.

### 2. Unreasonably Dangerous Design

■ Plaintiff alleges that Dursban was unreasonably dangerous in its design. In determining whether or not a product is unreasonably dangerous in design, the court must look to industry or government safety standards and to consumer expectations. *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir.1993). Defendants allege that any claim based on consumer expectations is preempted by FIFRA, and that Plaintiff lacks evidence that Defendants violated industry or government safety standards.

#### a. Consumer Expectations

■ Defendants argue that Plaintiff cannot show that Dursban is unreasonably dangerous in design based on consumer expectations because such a claim is preempted by FIFRA. The Ninth Circuit has rejected reliance on consumer expectations in a similar type of case. In *Papike v. Tambrands, Inc.*, the court addressed a Plaintiff's reliance on the consumer expectations to support her claim of a design defect in a tampon manu-

factured by Tambrands. 107 F.3d 737, 743 (9th Cir.1997). After finding that the tampon's compliance with federal regulations promulgated by the Food and Drug Administration preempted state law claims for negligent failure to warn, the court turned its attention to Plaintiff's claim that the product was unreasonably dangerous. *Id.* at 742. The court held that since the warning label met federal requirements, it could not fail a consumer expectations test. The court reasoned that "to rule otherwise would allow the anomalous circumstance that a consumer is entitled to expect a product to perform more safely than its government-mandated warnings indicate." *Id.* at 743.

This court agrees that Plaintiff cannot proceed under a consumer expectations theory to show defective design. In this case, Dursban was approved by the EPA on February 12, 1981. (Pinkham Affidavit, 6/2/93 at 2). Dursban carried an EPA-approved label. (*Id.*) The court is of the opinion that Plaintiff cannot proceed under a consumer expectations theory to show defective design because such a claim is preempted by FIFRA. Dursban, like the product in *Papike*, complied with federal product labeling and registration requirements. Like the product in *Papike*, Dursban is regulated by a federal legislative scheme which broadly preempts state claims based on federally approved labeling. For this court to allow a claim of defective design based on consumer expectations would represent an unwarranted end-run around federal preemption. The court is of the opinion that this aspect of Plaintiff's claim of unreasonably dangerous design is preempted by FIFRA.

#### b. Government or Industry Standards

■ Thus, to succeed in demonstrating that Dursban is unreasonably dangerous

3. Furthermore, even if the court did not grant Defendants' motion for summary judgment for the reasons set forth in this section, the court would nonetheless grant the motion based on Virginia's sophisticated user doctrine. "When a skilled purchaser ... knows or reasonably should be expected to know of the dangerous propensities or characteristics of a product, no implied warranty of merchantability arises." *Goodbar v. Whitehead Bros.*, 591 F.Supp. 552, 567 (W.D.Va.1984). In this case, Dursban is an insecticide, which is inherently poisonous to in-

sects, and, in inappropriate doses, to humans. Dow sold Dursban to the Hughes Defendants, who were in the business of extermination. Hughes certainly had knowledge of the dangerous propensities or characteristics of Dursban, as described by the label attached to the Dursban. Since Hughes was a sophisticated user of Dursban, Dow would prevail on this claim regardless of whether or not the claim was dismissed based on preemption and a lack of substantive evidence as set forth in this section. *Id.*

based on defective design, Plaintiff must prove that Dursban violated industry or government standards. As far as government standards are concerned, Dursban was and is a federally registered pesticide, approved for use by the EPA. Accordingly, Plaintiff's claim that Dursban is unreasonably dangerous based on government standards must fail. Nor has Plaintiff come forward with any evidence that Dursban violated any industry standards. In fact, her own expert has testified that he is unable to give an opinion with regard to whether or not Dursban is unreasonably dangerous. (Deposition of Neil Jurinski, Ph.D., 1/21/97 at 37). Based on the utter lack of admissible evidence brought forth on this issue, this claim must fail. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (holding that a dismissal on summary judgment was proper where the plaintiff did not come forward with any "any significant probative evidence tending to support the complaint.") The court rejects Plaintiff's claim that Defendants breached the warranty of merchantability by defectively designing Dursban.

### 3. Inadequate Warnings

■ Plaintiff has alleged that the warnings surrounding this product were inadequate. Defendants argue that this portion of Plaintiff's claim, like Plaintiff's claim for negligent failure to warn, is preempted by FIFRA. The court agrees that Plaintiff's claim that the warnings in this case were inadequate is preempted because it rests on a failure to warn or communicate about a product through its labeling. *Worm II*, 5 F.3d at 747; *see* Part III. A, *supra*. Because this claim is preempted, the court finds as a matter of law that Dursban is not unreasonably dangerous based on the inadequately warning consumers.

### C. Misrepresentation

■ Plaintiff alleges that Defendants negligently or intentionally misrepresented the safety of Dursban. Again, Defendants argue that Plaintiff's claim is preempted by FIFRA. The Fourth Circuit has ruled that statements about an insecticide which "sub-

stantially differ" from the language of an EPA-approved label can lead to a misrepresentation claim which is not preempted by FIFRA. *Lowe*, 47 F.3d at 130. The court has reviewed the alleged statements of Mr. Rose, a Dow employee, who spoke with Plaintiff about the use of Dursban in her home. Plaintiff's own deposition testimony reveals that Mr. Rose only expressed an opinion that, if properly applied, Dursban was safe for residential use. (Deposition of Cecile Lescs, at 305–06). This opinion was entirely consistent with the warning label, which contained instructions for application of Dursban into residences. Accordingly, the representations made by Dow did not "substantially differ" from the EPA-approved warning label. Therefore, this claim is preempted by FIFRA. *See Lowe*, 47 F.3d at 130. Defendants are entitled to summary judgment as to this claim.

### IV. Implied Warranty of Fitness for a Particular Purpose

■ Plaintiff alleges that Defendants breached the implied warranty of fitness for a particular purpose. An implied warranty of fitness attaches when "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods . . . ." Va.Code Ann. § 8.2–315 (Michie 1997). A "particular purpose"

> differs from the ordinary purpose for which the goods are used in that it envisages a use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.

Comment 2 to Va.Code Ann. § 8.2–315 (Michie 1997).

In this case, Dursban, an insecticide, was applied to Plaintiff's home. Dursban is commonly applied to residences by exterminators. There is nothing about the application of Dursban to Plaintiff's house to indicate that the application was anything but the ordinary use of Dursban as an insecticide. *Id.* Accordingly, no implied warranty of fit-

ness for a particular purpose was created in this case. The court will grant Defendants summary judgment as to this claim.

## V. Private Right of Action under FIFRA

Plaintiff has recently alleged that she has a private right of action under FIFRA based on alleged non-compliance with FIFRA by Dow. However, there is no private right of action under FIFRA. *Rodriguez v. American Cyanamid Co.,* 858 F.Supp. 127, 130–131 (D.Ariz.1994) (reviewing cases which have rejected the notion that FIFRA creates a private right of action based on Congressional intent not to create such causes of action). The court finds no reason to deviate from the rule set forth by the court in *Rodriguez,* which carefully analyzed the legislative history and found no private right of action under FIFRA. *Id.* Accordingly, the court will deny Plaintiff relief on this ground.

## VI. Negligent Application by Hughes

After disposition of the above claims, all that remains of this case is Plaintiff's claim that Hughes negligently applied Dursban to Plaintiff's home. After a review of the affidavit of Plaintiff's expert, Steven Tvedten, the court believes that a jury question remains in this case as to whether or not Hughes misapplied Dursban in Plaintiff's home, causing the injuries of which she complains. The court will deny Hughes' motion for summary judgment as to this claim.

## VII. Expert Fee Payments

Dow has also moved the court to enforce an agreement between Plaintiff's counsel and Dow under which Plaintiff agreed to pay for the time of Defendant's expert witness Dr. Wedner. At oral argument on July 31, 1997, Plaintiff's counsel stated that he had agreed to pay for Dr. Wedner's deposition, but indicated that he felt that the amount of his fee was excessive.

Dow asks that Plaintiff pay $4125.00, the amount Dr. Wedner charged Dow Chemical Company for the entire deposition.

Based on Dr. Wedner's affidavit, the court finds that his fee in this case was reasonable. The court, on a further review of the record, finds that Plaintiff is responsible for payment for the nine and one-half hours that her attorney deposed Dr. Wedner. Based on Dr. Wedner's hourly rate, the court finds that Plaintiff must pay Dow $3,562.50 pursuant to her attorney's agreement with Dow to pay certain expert fees.

## VIII. Conclusion

Defendants' motion for preemption is granted. Furthermore, Dow's motion for summary judgment is granted in its entirety. Dow is dismissed as a Defendant in this case. Hughes motion for summary judgment is granted with respect to all claims except for Plaintiff's claim that Hughes negligently applied Dursban in Plaintiff's home. Plaintiff is directed to pay Dow $3,562.50 for certain expert fees which her counsel agreed to pay in this case.

### ORDER

In accordance with the accompanying memorandum opinion, it is hereby

### ADJUDGED AND ORDERED

(1) that Dow Chemical Company's motion for summary judgment is **GRANTED.** Dow Chemical Company is dismissed as a Defendant in this case;

(2) that the motion for summary judgment filed by William R. Hughes, Inc., and William R. Hughes (collectively "Hughes") is **GRANTED IN PART** and **DENIED IN PART.** The court grants Hughes' motion for summary judgment as to all claims except for Plaintiff's claim that Defendants negligently applied Dursban to her house; and

(3) that Plaintiff is directed to pay Dow Chemical Company $3,562.50 pursuant to the agreement made by her counsel to pay certain expert fees.