[No. 38568-2-I. Division One. September 22, 1997.]

KARL F. BECKER, *Appellant*, v. U.S. MARINE
COMPANY, ET AL., *Respondents*.

*Thomas G. Burke* of *Law Offices of Thomas G. Burke*, for appellant.

*H. Scott Holte* and *Joni Larson* of *Anderson Hunter Law Firm*, for respondents.

BECKER, J. — Karl Becker was riding in the bow seating area of a powerboat which was pulling a water-skier on Lake Sammamish. When the skier fell, the driver turned the boat sharply and Becker fell into the water. He was struck by the hull of the boat and the motor propeller, and suffered serious injuries.

Becker sued Bayliner Marine Company and U.S. Marine Company, entities involved in design and manufacture of the boat. He alleged the defendants negligently designed

the bow seating area without safety devices such as handrails to prevent passengers from being thrown from the boat; negligently installed upholstery materials which became slippery when wet, thereby contributing to the risk of being thrown from the boat; and negligently failed to warn of the risk of being thrown from the bow seating area of the boat.

The trial court concluded the Federal Boat Safety Act preempted state tort law, on which Becker based his claims. Becker appeals from the trial court's order of summary judgment dismissing his suit.

We review a summary judgment de novo.[1] The issue is whether the Act precludes tort claims that assert a duty of safe design, when the Coast Guard has neither regulated bow seating areas nor formally adopted a policy of non-regulation. We conclude it does not preempt such claims, and reverse.

The Federal Boat Safety Act, first enacted by Congress in 1971, authorizes the Coast Guard, as the delegate of the Secretary of Commerce,[2] to prescribe regulations "establishing minimum safety standards for recreational vessels and associated equipment, and establishing procedures and tests required to measure conformance with those standards."[3] The Act provides for fines to penalize manufacturers and sellers of vessels that do not comply with safety standards promulgated under the Act, or which have a safety defect identified by the Coast Guard.[4] It does not provide for compensation to persons injured by a nonconforming or defective vessel.

Section 4306 of the Act prohibits a state from enforcing a "law or regulation establishing a recreational vessel or associated equipment performance or other safety stan-

---

[1]*Young v. Key Pharm.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989).

[2]*See* H.R. Rep. 100-54 (1988).

[3]46 U.S.C. § 4302(a)(1) (1995).

[4]46 U.S.C. § 4311.

dard . . . that is not identical to a regulation prescribed under section 4302 of this title."[5]

The Act explicitly authorizes the Coast Guard to require the installation of "life- and grab-rails."[6] But the Coast Guard has thus far promulgated no regulations requiring the installation of handrails in bow seating areas, and no standards for seat upholstery. The defendants contend that in the absence of Coast Guard regulation, any jury award of damages enforcing a duty to design bow seating with handrails and slip-proof upholstery would not be identical to a regulation promulgated under the Act, and therefore such suits are properly dismissed as preempted by federal statute.[7] They contend Congress intended to preempt the entire field of boating safety by centralizing authority over safe boat design exclusively in the Coast Guard.

 The Act itself states that the Coast Guard "may" prescribe regulations establishing "minimum" safety standards and requiring installation of safety equipment.[8] The word "may" is permissive, not mandatory. The Act thus sensibly contemplates that the Coast Guard will not necessarily be able to identify, weigh, and regulate every risk involved in recreational boating. Under the Act, the Coast

---

[5] 46 U.S.C. § 4306 provides:

"Unless permitted by the Secretary under section 4305 of this title, a State or political subdivision of a State may not establish, continue in effect, or enforce a law or regulation establishing a recreational vessel or associated equipment performance or other safety standard or imposing a requirement for associated equipment (except insofar as the State or political subdivision may, in the absence of the Secretary's disapproval, regulate the carrying or use of marine safety articles to meet uniquely hazardous conditions or circumstances within the State) that is not identical to a regulation prescribed under section 4302 of this title."

[6] 46 U.S.C. § 4302(a)(2).

[7] See Carstensen v. Brunswick Corp. 49 F.3d 430, 432 (8th Cir. 1995) ("Allowing a jury to assess damages for failure to install a propeller guard would create, in effect, a state requirement that guards be installed. State damage actions based on such failure would establish a regulation 'imposing a requirement for associated equipment' that is not identical to that prescribed by the Coast Guard.").

[8] 46 USC § 4302(a)(1).

Guard has promulgated regulations in about 10 specific areas.[9] There is no reason to believe these regulations comprehensively set forth every standard a boat must meet to be reasonably safe.

Further, in view of the savings clause in section 4311 of the Act, it is clear Congress did not intend to insulate the boating industry from tort liability altogether. The savings clause in § 4311(g) of the Act explicitly preserves liability under state laws: "Compliance with this chapter or standards, regulations, or orders prescribed under this chapter does not relieve a person from liability at common law or under State law."

■ The savings clause and the preemption clause, because they pull in opposite directions, present a challenging problem in statutory construction. But the tension between the two sections is not unique in federal legislation.[10] Our task is to resolve the case before us in a manner that gives effect to both clauses.[11]

■ The doctrine of preemption is rooted in the Supremacy Clause of the United States Constitution.[12] A state law is without effect when it conflicts with federal law.[13] But the historic police powers of states to provide for the

---

[9]The Coast Guard regulations establish equipment requirements (personal flotation devices and visual distress signals) and performance standards (display of capacity information, safe loading, safe powering, flotation, electrical systems, fuel systems, ventilation, and start in gear protection). See 33 C.F.R. §§ 175, 783 (1997).

[10]See Silkwood v. Kerr-McGee, 464 U.S. 238, 256, 104 S. Ct. 615, 78 L. Ed. 2d 443 (1984) (in context of statute regulating nuclear power, the Supreme Court concludes Congress intended to tolerate tension between conclusion that safety regulation is exclusive concern of federal law, and conclusion that a state may nevertheless award damages based on its own law of liability).

[11]See Wright v. Engum, 124 Wn.2d 343, 352, 878 P.2d 1198 (1994) (courts should read statute as a whole, considering all provisions in relation to each other and giving effect to each provision).

[12]U.S. Const. art. 6 ("This Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding.").

[13]Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992).

108

health, safety, and welfare of their citizens are not preempted unless that is the clear and manifest purpose of Congress.[14]

██ When Congress expressly defines the preemptive reach of a statute, matters beyond that reach are not preempted.[15] When, as here, the reach of a preemptive federal law is not explicitly defined, it depends on the statutory context surrounding the preemption clause, and the purpose Congress sought to achieve by the statute.[16]

According to a Senate report, the purpose of the Federal Boat Safety Act

> is to provide a coordinated national boating safety program involving both the Federal Government and the States. [It] is intended to improve boating safety by requiring manufacturers to provide safer boats and boating equipment to the public through compliance with safety standards.[17]

The Senate report notes the preemption section

> conforms to the long history of preemption in maritime safety matters and is founded on the need for uniformity applicable to vessels moving in interstate commerce. In this case it also assures that manufacture for the domestic trade will not involve compliance with widely varying local requirements.[18]

According to the same Senate report, the purpose of the savings clause is "to assure that in a product liability suit mere compliance by a manufacturer with the minimum standards promulgated under the Act will not be a complete defense to liability."[19]

---

[14]*Cipollone v. Liggett Group*, 505 U.S. at 516. *See also, Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S. Ct. 2240, 2250, 135 L. Ed. 2d 700 (1996).

[15]*Cipollone v. Liggett Group*, 505 U.S. at 517.

[16]*See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S. Ct. 2240, 2251, 135 L. Ed. 2d 700 (1996).

[17]S. Rep. 92-248 (1971).

[18]S. Rep. 92-248 § 10 (1971).

[19]S. Rep. 92-248 § 40 (1971).

Some reported decisions, notably *Mulhern v. Outboard Motor Corp.*[20] and *Rubin v. Brutus Corp.*,[21] have construed the Act to preserve private tort actions. In *Mulhern*, the plaintiff brought a strict liability claim for installation of a defectively designed throttle that allegedly caused a boat to lunge forward, throwing the plaintiff partly out of the boat where he came in contact with the propeller. *Mulhern* held there was no preemption "because the Act and the regulation are only *minimum* safety standards which do not provide private tort remedies."[22]

In *Rubin*, a seat came loose in a collision, allegedly causing a passenger to be thrown into a bulkhead, breaking her neck. *Rubin*, in holding the Act did not preempt the tort claims, emphasized the express provision in § 4310 of the Act requiring boat manufacturers to give public notice when a boat "fails to comply with the regulation, *or contains a defect that creates a substantial risk of personal injury to the public.*"[23]

> The reference in this section both to noncompliance with the regulations and to defects creating substantial risks of injury rather strongly suggests a legislative intention that compliance with regulations promulgated under the act does not necessarily satisfy the manufacturer's duty of care to the public.[24]

Presented with claims involving injuries allegedly resulting from a manufacturer's failure to install propeller guards, a number of other courts have held the Act's preemptive reach does rule out such claims. The leading case in this category is *Mowery v. Mercury Marine Divi-*

---

[20]*Mulhern v. Outboard Motor Corp.*, 146 Wis. 2d 604, 432 N.W.2d 130, 135 (1988).

[21]*Rubin v. Brutus Corp.*, 487 So. 2d 360, 363 (Dist. Ct. App. Fla 1986).

[22]*Mulhern*, 432 N.W.2d at 135.

[23]46 U.S.C. § 4310(b) (emphasis added).

[24]*Rubin*, 487 So. 2d at 363.

*sion of Brunswick Corp.*[25] *Mowery* construes the Act as broadly preemptive, and interprets the savings clause as having effect only when the tort claim, as in *Mulhern* and *Rubin*, concerns "defectively designed products that are actually installed."[26]

Relying on *Mowery*, defendants argue Becker's claim was properly dismissed because he did not allege actual installation of a defectively designed product. We are unpersuaded that the Act itself makes this distinction between installation and design, and reject the argument. Of greater significance to *Mowery*'s preemption holding was the record establishing that the Coast Guard considered a regulation requiring propeller guards, but formally decided boats would be safer without them.[27]

Although at least one court has held the Act does not preempt even propeller guard suits,[28] Becker does not request this court to make such a ruling. He accepts *Mowery*'s premise that the Coast Guard's formal consideration and rejection of a proposed regulation will preempt state tort claims as to the feature or structure considered.[29] He contends his tort claim is viable because the Coast Guard has never formally considered and rejected regulating the design of bow seating areas or the installment of handrails.

The approach suggested by Becker was taken in *Stanley v. Bertram-Trojan, Inc.*[30] The plaintiff suffered leg injuries in falling through a hatch, and sued the manufacturer alleging the hatch was negligently designed. The court held the absence of a Coast Guard regulation governing hatch

[25] *Mowery v. Mercury Marine Div. of Brunswick Corp.*, 773 F. Supp. 1012 (N.D. Ohio 1991).

[26] *Mowery*, 773 F. Supp. at 1017 (emphasis removed from original).

[27] *Mowery*, 773 F. Supp. at 1015.

[28] *Moore v. Brunswick Bowling & Billiards Corp.*, 889 S.W.2d 246 (Tex. 1994).

[29] Becker joined in a stipulation dismissing his fourth and fifth causes of action, pertaining to the lack of a propeller guard and failure to warn about the propeller.

[30] *Stanley v. Bertram-Trojan, Inc.*, 855 F. Supp. 657 (S.D.N.Y. 1994).

design could not implicitly extinguish the right to bring a claim for unsafe design under state product liability law.

> There is no evidence here that the Coast Guard ever considered adopting regulations concerning safety standards for hatches. Absent such a history, the language of the statute does not permit the conclusion that negligence rules may not be applied as to a feature or structure that is not the subject of any federal regulation.[31]

We agree with the analytical approach in *Stanley*. The propeller guard cases represent a special situation where there is proof of the Coast Guard's considered decision not to regulate. A tort claim defeats the purposes of the Act and is therefore preempted only when the duty asserted conflicts with the Coast Guard's explicit decision either to adopt a particular standard or to leave the feature or structure unregulated.

The issue in this case, therefore, is a factual one: has the Coast Guard explicitly considered and rejected regulation in matters of handrails and bow seating design?

To prove explicit nonregulation, the defendants submitted the declaration of Lysle Gray, a marine consultant formerly employed as chief of the product safety assurance branch of the Coast Guard's Office of Boating Safety. While holding that office, Gray participated in the drafting of regulations under the Federal Boat Safety Act. According to Gray, the Coast Guard chose not to regulate open-bow seating areas of boats. He says the Coast Guard also chose not to issue any regulations with respect to handrails, though it was aware of certain studies and voluntary standards concerning bow seating and handrails.

The declaration of Lysle Gray falls far short of the record in *Mowery*, which included official letters from the Coast Guard and reports and meeting minutes of the National Boating Safety Advisory Council. The evidence in *Mowery* showed the Coast Guard requested a subcom-

---

[31]*Stanley v. Bertram-Trojan*, 855 F. Supp. at 658.

mittee of the Advisory Council to assess arguments for and against requiring propeller guards. The subcommittee determined propeller guards are not advisable because they decrease an operator's ability to maintain control over the boat, thereby increasing the probability of striking a body in the water. The Coast Guard adopted the subcommittee's recommendation as its official policy.

Defendants here have failed to present any similar official record to corroborate Gray's statements. Instead, they contend that Gray "is likely the sole remaining source of information regarding a decision to not regulate open-bow seating areas and not regulate with respect to handholds."

According to official correspondence from the Coast Guard, there are no minutes, letters or reports indicating consideration of handrails and bow seating by the Coast Guard. It is implausible that the only evidence of a government decision not to regulate would be the personal recollection of an ex-employee. Gray does not identify any reasons why the Coast Guard found it inadvisable to require handrails or slip-proof seat cushions. His declaration merely confirms that the Coast Guard has not regulated these matters. We hold his declaration is insufficient to establish explicit nonregulation by the Coast Guard comparable to its decision not to require propeller guards.

Because the Coast Guard has not formally considered, evaluated, and rejected regulation of bow seating design, including handrails and upholstery, we conclude Becker's claims do not conflict with Coast Guard regulations. For purposes of preemption analysis, Becker's claims for failure to warn are indistinguishable from his negligent design claims.[32] They are likewise not preempted.

As an alternative basis for arguing that the Act does not preempt his tort claim, Becker contends federal jurisdiction under the Act does not extend to Lake Sam-

---

[32]*See Davis v. Brunswick Corp.*, 854 F. Supp. 1574, 1583 (N.D. Georgia 1994).

mamish. We need not address this contention in view of our holding on the preemptive reach of the Act.

The order of summary judgment is reversed.

COLEMAN and WEBSTER, JJ., concur.

Review denied at 134 Wn.2d 1025 (1998).