[No. 20781-8-II. Division Two. March 27, 1998.]

CHARLENE K. REECE, *Individually and as Guardian, Appellant*, v. GOOD SAMARITAN HOSPITAL, ET AL., *Defendants*, TAMBRANDS, INC., *Respondent*.

*John S. Moceri* of *Manza Moceri, P.S.*, for appellant.

*Ronald C. Gardner* of *Gardner Bond Trabolsi* (*Roger E. Podesta* of *Debevoise & Plimpton*, of counsel), for respondent.

HUNT, J. — Charlene Reece appeals summary judgment in favor of defendants Tambrands, Inc. Reece brought a products liability action after she used Tampax Super Plus Tampons and developed toxic shock syndrome (TSS), in December 1990. The trial court granted the defendants' motion for summary judgment on grounds that federal law preempts Reece's claims of "negligent or defective tampon design, to the extent such design claims are based on tampon absorbency or fiber composition." After the Court of Appeals denied discretionary review, the trial court

granted Tambrands' motion for summary judgment and dismissed Reece's remaining claims that Tambrands violated express and implied warranties concerning its tampon. We reverse summary judgment on the design defect claim and affirm on the express warranty, implied warranty, and failure to warn claims.

## I
### FACTS

Reece developed TSS as a result of using Tambrands' "super plus" tampons. Both her feet and portions of all of her fingers and thumbs were amputated. She also suffered respiratory distress syndrome and acute renal failures, which necessitated dialysis.

## II
### ISSUES

1) Has the Federal Food and Drug Administration (FDA) regulated the design and manufacturing of tampons so as to preempt a state cause of action for negligent and defective tampon design and manufacturing?

2) Are Reece's claims of breach of express and/or implied warranties preempted by federal regulation?

## III
### ANALYSIS

### A. Standard of review

■ When reviewing a summary judgment order, the appellate court engages in the same inquiry as the trial court and reviews the evidence de novo. *Tanner Elec. Coop. v. Puget Sound Power & Light*, 128 Wn.2d 656, 668, 911 P.2d 1301 (1996). A summary judgment motion should be granted if, after considering all the submissions and all reasonable inferences drawn therefrom in favor of the nonmoving party, there is no genuine issue of material fact and "the moving party is entitled to judgment as a matter of

law." *Tanner Elec.*, 128 Wn.2d at 668 (citations omitted). The trial court can be affirmed on any grounds supported by the record. *Syrovy v. Alpine Resources, Inc.*, 80 Wn. App. 50, 906 P.2d 377 (1995), *review denied*, 129 Wn.2d 1012 (1996).

## B. Federal Preemption

 Reece asserts that there is no FDA preemption of state product liability law for defective tampon design and manufacturing. She argues that such preemption is limited to warning and labeling requirements. Tambrands counters that Reece's defective design claims based on absorbency of Tampax Super Plus tampons, whether cast in terms of strict liability, negligence, or breach of implied warranty, are preempted by federal law.

> The doctrine of preemption is rooted in the Supremacy Clause of the United States Constitution. [U.S. CONST. art. VI]. A state law is without effect when it conflicts with federal law. But the historic police powers of states to provide for the health, safety, and welfare of their citizens are not preempted unless that is the clear and manifest purpose of Congress.
>
> When Congress expressly defines the preemptive reach of a statute, matters beyond that reach are not preempted. When, as here, the reach of a preemptive federal law is not explicitly defined, it depends on the statutory context surrounding the preemption clause, and the purpose Congress sought to achieve by the statute.

*Becker v. U.S. Marine Co.*, 88 Wn. App. 103, 107-08, 943 P.2d 700 (1997) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S. Ct. 2240, 2250, 135 L. Ed. 2d 700 (1996); *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516-17, 112 S. Ct. 2608, 2617, 120 L. Ed. 2d 407 (1992)) (footnote omitted).[1] In the absence of express statutory language, the court will

---

[1]*See also* 21 C.F.R. § 808.1(d); *Berger v. Personal Prods., Inc.*, 115 Wn.2d 267, 273, 797 P.2d 1148 (1990) (citing *Moore v. Kimberly-Clark Corp.*, 867 F.2d 243, 244-45 (5th Cir. 1989); *National Bank of Commerce v. Kimberly-Clark Corp.*, 38 F.3d 988, 997 (8th Cir. 1994)) (state or local "requirements" are preempted only when the FDA has specifically regulated a particular device).

not consider whether preemption is implied. *National Bank of Commerce v. Kimberly-Clark Corp.*, 38 F.3d 988, 991 (8th Cir. 1994). The party claiming federal preemption bears a heavy burden of overcoming "the presumption that the historic police powers of the states are not to be superseded by federal law unless that is the clear and manifest purpose of Congress." *Wutzke v. Schwaegler*, 86 Wn. App. 898, 903, 940 P.2d 1386 (1997) (citing *Lohr,* 116 S. Ct. at 2250).[2]

In 1976 Congress enacted the Medical Device Amendments (MDA), granting the Food and Drug Administration power to regulate all medical devices intended for human use. 21 U.S.C. § 360c-k (1994). There are three classes of medical devices under the MDA, of which Tampons are a Class II. 21 C.F.R. §§ 884.5460, 884.5470 (1996). A Class II medical device is one that poses some risk of injury to the user, so the manufacturers of these devices must comply with federal performance regulations known as "special controls." 21 U.S.C. § 360c(a)(1)(B) (1994) (as amended in 1990).

Section 360k(a) of the MDA provides:

(a) General rule

Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

---

[2]*See also* the newly proposed FDA rule on federal preemption regarding state and local requirements applicable to medical devices:

This action is being taken to clarify and codify the agency's longstanding position that available legal remedies, including State common law tort claims, generally are not preempted under the Federal Food, Drug, and Cosmetic Act . . . .

Medical Devices; Preemption of State Product Liability Claims, 62 Fed. Reg. 65,384 (1997) (to be codified at 21 C.F.R. pt. 808).

21 U.S.C. § 360k(a) (1994). The question here is what "requirements," if any, has the federal government established with respect to tampon manufacture and sale.

### 1. Explicit Nonregulation

Tambrands argues that the FDA studied tampon absorbency and specifically declined to set minimum or maximum limits, choosing instead to inform consumers of the relative risks and allow them to decide for themselves how to balance the enhanced convenience of higher absorbency against the greater risk of TSS. Although the C.F.R. demonstrates that the FDA undertook various studies to test for absorbency ratings, there is no conclusive indication that the FDA considered and rejected regulating the design and manufacture of tampons. Menstrual Tampons; User Labeling, 47 Fed. Reg. 26,982, 26,984 (1982) (to be codified at 21 C.F.R. pt. 801) notes as follows:

> FDA has determined that absorbency is not a basis upon which to exclude any style or brand of tampon from the requirements of the final rule. Nonetheless, because the risk of TSS appears to decrease as tampon absorbency decreases, the final rule requires that product labeling advise women to use tampons with the minimum absorbency needed to control menstrual flow.

> . . . Even if tampons with a particular fiber, ingredient, material, design, construction, or functional characteristic were shown to exhibit significantly dissimilar risk characteristics and consumers could identify those tampons from product labeling, application of the final rule to them would still be necessary to protect the public health and minimize the serious effects of TSS because all tampons are associated with TSS.

The report goes on to note that one study has found a detectable association between TSS and tampon absorbency. 47 Fed. Reg. at 26,984. The FDA apparently also considered, but rejected, reclassification of tampons from class II to class III. Even in successive years, the focus remained on standardizing absorbency and package labeling. As indicated in the September 23, 1988, Federal Register, vol. 53,

no. 185, the FDA did not seek to set upper and lower absorbency limits on tampons. Rather the FDA presumed that no one would manufacture a tampon with absorbency below four grams because of its ineffectiveness. The FDA also did not expect manufacturers to exceed 18 grams, but mentioned creating a new absorbency range "F" if such a product were produced.

■ Tambrands cannot establish federal preemption on these bases. *See Becker*, 88 Wn. App. at 110-11 (noting that a federal agency's "formal consideration and rejection of a proposed regulation will preempt state tort claims as the feature or structure considered," but finding no history or sufficient evidence in that case to prove "explicit non-regulation" by the federal government). The FDA has not engaged in "explicit non-regulation" of tampon design or upper limits of absorbency, other than establishing a standardized absorbency rating and labeling system.

2. Warning Labels

In 1982, the FDA determined that in order "[t]o protect the public and to minimize the serious adverse effects of TSS, menstrual tampons shall be labeled"[3] to inform the public of the statistical risk of developing TSS, the warning signs of the disease, and the need to seek medical attention if symptoms occur. 21 C.F.R. § 801.430(b), (d) (1997).

■ It has already been decided that "federal law preempts a state tort action based on the claims of inadequate warnings and instructions about the risk of contracting [TSS] . . . ." *Berger v. Personal Prods., Inc.*, 115 Wn.2d 267, 268, 797 P.2d 1148 (1990). Thus the trial court properly granted summary judgment to Tambrands on this issue.

---

[3]In 1990, the FDA revised the warning labels to "enable consumers to compare the absorbency of one brand and style of tampons with the absorbency of all other brands and styles, to choose the lowest absorbency needed to control menstrual flow, and, as a result, to reduce their risk of TSS." Medical Devices; Labeling for Menstrual Tampons; Ranges of Absorbency, 54 Fed. Reg. 43,766 (1989); 21 C.F.R. § 801.430(e) (1997). The FDA's goal was to inform the consumers by implementing uniform absorbency rates which could then be used to purchase the lowest absorbency tampon needed.

### 3. Design defects

■ Federal courts have concluded that design defect claims against tampon manufacturers are not preempted by the FDA's actions in regulating package labels and warnings and in standardizing absorbency ratings. *National Bank*, 38 F.3d 988; *Moore v. Kimberly-Clark Corp.*, 867 F.2d 243 (5th Cir. 1989); *Bejarano v. International Playtex, Inc.*, 750 F. Supp. 443 (D. Idaho 1990); and *Krause v. Kimberly-Clark Corp.*, 749 F. Supp. 164 (W.D. Mich. 1990).[4] The *Lohr* court held that general federal labeling and manufacturing requirements, not specifically applicable to a Class III medical device, did not preclude common-law claims for defective and negligent design. *Lohr*, 116 S. Ct. at 2254-55.

Tambrands also contends that the FDA has regulated tampon design by effectively banning manufacturing of tampons with absorbency capacities greater than 15 grams. 21 C.F.R. § 801.430(d)(3), (e) (1997). This argument fails. Even assuming that the FDA has determined tampon absorbency rates over 15 grams to be unsafe for public use, the FDA does not preempt a state cause of action for unsafe tampons in the absorbency range of 15 grams and under, such as Tambrands Super Plus, with an absorbency rating of 12 to 15.

■ Tambrands points to the FDA's comment that there is no conclusive data attributing TSS to the use of any particular tampon fiber. 54 Fed. Reg. 43,769 (1989). This argument strengthens Reece's position that the FDA did not regulate design and manufacturing of tampons by requiring or even recommending the use of any fiber composition in tampon manufacturing.

■ Washington law recognizes two tests for defective product design:

---

[4]Tambrands argues that *Moore, Krause,* and *Bejarano* involved alleged TSS episodes that took place before the 1990 FDA regulations went into effect. Tambrands also contends that in *National Bank,* a 1994 case, the defendant argued for blanket preemption of all design and manufacturing defect claims, which is not Tambrands' position. While conceding that the FDA's regulation does not preempt all design defect claims, Tambrands asserts that Reece's defective design claims, based upon tampon absorbency and fiber composition, are preempted by the FDA's exercise of its regulatory authority in 1990.

by proving that the likelihood and seriousness of harm outweighs the burden on the manufacturer to design a product that would have prevented that harm (and outweighs any adverse effect that an alternative design would have on the product's usefulness); or by showing that the product was "unsafe to an extent beyond that which would be contemplated by the ordinary consumer" under RCW 7.72.030(3). *Falk* [*v. Keene Corp.*], 113 Wn.2d [645,] 654, 782 P.2d 974 [(1989)]. Under the latter test, the consumer's expectations must be the reasonable expectations of the ordinary consumer. *Falk*, 113 W.2d at 655.

*Anderson v. Weslo, Inc.*, 79 Wn. App. 829, 837, 906 P.2d 336 (1995).

Dr. Richard Sweet, Reece's expert, declared that:

[A] tampon designed and manufactured with an absorbency capacity of "12 to 15" in grams is unreasonably dangerous. A woman using such a tampon is exposed to an unreasonable risk of developing toxic shock syndrome beyond what the average woman expects. The average or ordinary patient, i.e., one without sophisticated medical knowledge, thinks that since the tampon is on the market it is reasonably safe, when, in actuality, it is not.

Tambrands responds that under the first test, known as "risk-utility," it could not be found liable because Tambrands provides safer alternatives: (1) by manufacturing three other types of tampons; and (2) by warning consumers that the risks associated with use of highest absorbency tampons is lowered by using lower absorbency types. Tambrands cites authority from only other jurisdictions and concedes that it has not found similar authority in Washington.

Tambrands also responds that the second test, known as the "consumer expectation" test, cannot be met where, as here, a manufacturer has adequately warned consumers of the risks associated with using a product. It cites *Rosburg v. Minnesota Mining & Mfg. Co.*, 181 Cal. App. 3d 726, 733, 226 Cal. Rptr. 299, 304 (1986); and *Papike*

*v. Tambrands, Inc.*, 107 F.3d 737, 743 (9th Cir.), *cert. denied,* 118 S. Ct. 166, 139 L. Ed. 2d 110 (1997) (where labeling is preempted by FDA, it would be anomalous to hold that a consumer is entitled to expect a product to be safer than government-mandated warnings). Tambrands' response to the "consumer expectation" test is persuasive.

But under the risk-utility test, there is a genuine issue of material fact, established by Sweet's declaration, as to the safety of super-absorbency tampons, sufficient to establish a prima facie case under State law.[5] Accordingly, the trial court erred in granting Tambrands' motion for summary judgment based upon federal preemption, thereby failing to reach the merits of Reece's design defects claims under State law.

### C. Breach of Express and/or Implied Warranties

#### 1. Implied

██ Reece neither cites authority nor presents a clear argument on the issue of implied warranties. Consequently, we do not consider this issue or disturb the trial court's ruling. *State v. Farmer*, 116 Wn.2d 414, 433, 805 P.2d 200, 812 P.2d 858, 13 A.L.R.5TH 1070 (1991).

#### 2. Express

Reece asserts that Tambrands breached its express warranty that the product was safe, as advertised by the following statements, which appeared on a box of tampons she purchased: "'Tampax tampons are America's favorite tampons — over fifty years of testing and experience"; and, "used by more women doctors — women have trusted Tam-

---

[5]In *Papike*, 107 F.3d at 743, a toxic shock syndrome case involving a regular tampon, the Ninth Circuit Court of Appeals ruled that: "'Tambrands' warnings met the federal requirements and Papike's design defect claim therefore fails the 'consumer expectation' test. To rule otherwise would allow the anomalous circumstance that a consumer is entitled to expect a product to perform more safely than its government-mandated warnings indicate." As to the "risk-benefit" test, however, the court implied that there could be an independent state cause of action. But in *Papike* the plaintiff's expert's affidavit was insufficient to meet the burden of establishing a design defect.

pax tampons for over fifty years. Today, more women and more women doctors use Tampax tampons than any other tampon or pad." Tambrands counters that these statements are true. Moreover, Reece testified that when she purchased the tampons, she was aware that TSS was associated with tampon use and that TSS was a serious disease which could cause death.

In *Cipollone*, the court held that express warranties are not preempted because they are imposed by the warrantor, not required by law. *Cipollone*, 505 U.S. at 525-30; *Goodwin v. Bacon*, 127 Wn.2d 50, 58, 896 P.2d 673 (1995). But Reece introduced no evidence that she relied on the alleged express warranty. *Arrow Transp. Co. v. A.O. Smith Co.*, 75 Wn.2d 843, 848, 454 P.2d 387 (1969) (before recovering on a claim of breach of an express warranty contained in an advertisement, a plaintiff must demonstrate that he or she justifiably relied on a statement contained in the advertisement). Accordingly, the trial court properly granted summary judgment to Tambrands on this issue.

IV

CONCLUSION

We reverse and remand for trial on the issue of design defect and affirm on the express warranty, implied warranty, and failure to warn claims.

MORGAN and ARMSTRONG, JJ., concur.

Review denied at 136 Wn.2d 1018 (1998).