41 P.3d 488 (2002)
110 Wash.App. 332
Peter ERIKSEN, Appellant,
v.
MOBAY CORPORATION, d/b/a Miles Inc., an Indiana Corporation; Bayer U.S.A. Inc., a Delaware Corporation; Northwest AG Aviation; Brown Boys Aviation; Hansen Fruit and Cold Storage Co.; Harley Hansen and Jane Doe Hansen; Gary Hansen and Jane Doe Hansen; Bill McCombs and Jane Doe McCombs, Respondents,
Frank Buettner; Jerry L. Vanden Bos; Brown & Gius Farms; Jerry Allred; ABC Companies 1-6; John and Jane Does 1-10; Sun Royal Co.; and Sun Air, Inc., Defendants.
No. 19350-1-III.
Court of Appeals of Washington, Division 3, Panel Eight.
February 21, 2002.
*489 David S. Mann, Jennifer A. Dold, Bricklin & Gendler, Seattle, for Appellant.
Christopher W. Tompkins, Amanda E. Vedrich, Sylvia K. Bamberger, Betts, Patterson & Mines, Seattle, Ronald Bergman, Bergman, Gibbs, Lassman, Seattle, James S. Scott, Scott & Scott, Yakima, Mark M. Myers, Williams, Kastner & Gibbs LLP, Seattle, for Respondents.
KURTZ, C.J.
Alleging that he was damaged by exposure to pesticides, Peter Eriksen sued the pesticide's manufacturer, the applicators, and his neighbors under theories of negligence, strict liability, trespass, and product liability. Prior to trial, his claim against the pesticide's manufacturer was dismissed on summary judgment because the court held that the claim was preempted by the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA). Mr. Eriksen's remaining claims were dismissed when he did not personally appear for trial. Mr. Eriksen appeals both the summary judgment dismissal of his claim against the pesticide manufacturer and the dismissal of his remaining claims because he failed to appear. We affirm the dismissal of the claim *490 against the pesticide's manufacturer because the claim was preempted by the FIFRA. We reverse the order dismissing Mr. Eriksen's remaining claims and remand for trial because Mr. Eriksen was represented at trial by counsel, who indicated he was ready to proceed.

FACTS
Since 1974, Peter Eriksen has lived on and worked his family farm, which is comprised of approximately 180 acres and located in Grant County, Washington. In 1988, Mr. Eriksen obtained an organic certification for his farm and its products.
Jerry Allred owns adjacent property, immediately east of Mr. Eriksen's farm. In August 1991, Frank Buettner, a pilot for Northwest Ag Aviation, applied the pesticides Monitor and Asano to Mr. Allred's potato crops.
While working in his field, Mr. Eriksen observed a yellow airplane begin its aerial application of pesticides to Mr. Allred's potato fields. A slight air current was moving east to west. At that time, Mr. Eriksen's sister appeared and warned Mr. Eriksen that chemicals were moving onto the Eriksen property. By this time, Mr. Eriksen could smell a strong chemical smell. He suffered almost immediate physical reactions, including burning eyes, a burning throat, headache and general listlessness. Mr. Eriksen's sister contacted the applicator, and the application was stopped.
Three days later, Mr. Allred had another aerial application of pesticides sprayed on his potatoes. Mr. Eriksen, as well as one of Mr. Buettner's friends, watched the application. Mr. Eriksen did not detect a wind current and, initially, did not detect any chemical odors. However, about five or ten minutes after the plane left, Mr. Eriksen again noticed an odor he now associates with the chemical Monitor. He detected a slight wind current, blowing east to west, which began after the chemical application was complete. Mr. Eriksen suffered the same symptoms he had suffered during the first application.
In 1994, Mr. Eriksen filed suit against Bayer Corporation, the manufacturer of Monitor, and against several landowners and chemical applicators involved in the 1991 aerial application of the pesticides.
Procedural Background.
SUMMARY JUDGMENT ORDER
In April 1999, Bayer filed a motion for summary judgment seeking dismissal of Mr. Eriksen's claims against it. Bayer argued that Mr. Eriksen's claim under the Washington Product Liability Act was preempted by federal law. The trial court agreed in a memorandum opinion. An order reflecting the dismissal was signed on August 24, 1999. Mr. Eriksen filed a notice of appeal on September 24, 1999-31 days after the entry of the order.
On September 29, this court notified the parties that the court, on its own motion, had moved to dismiss the matter as untimely. Mr. Eriksen was informed that he had until October 15 to show why his appeal should not be dismissed. Prior to the deadline, Mr. Eriksen filed a motion for a voluntary withdrawal of his notice of appeal, pursuant to RAP 18.2. Approximately two weeks later, Mr. Eriksen moved to withdraw his motion for voluntary dismissal, and he submitted a memorandum addressing the timeliness of his appeal.
The court, on its own motion, set the matter for hearing in January 2000, to determine the appealability of the CR 54(b) order and for dismissal due to untimely filing. After hearing argument, the commissioner entered a ruling that the CR 54(b) findings were proper and then dismissed the appeal as untimely.
The commissioner noted in the ruling that Mr. Eriksen urged that the dismissal for untimely filing be without prejudice so that he may challenge the order when the remaining claims against the remaining parties were resolved. The commissioner's ruling refers to Fox v. Sunmaster Prods., Inc., 115 Wash.2d 498, 504-05, 798 P.2d 808 (1990), which held that RAP 2.4(b) permits review of an earlier order or ruling, including an appealable order, regardless of whether it is designated in the notice of appeal, if it prejudicially *491 affects the decision designated in the notice.
The commissioner quoted the Fox court:
"Depending upon the nature of the case and the relationship between the parties' claims, a partial summary judgment order can prejudicially affect every order entered thereafter, and often will plainly so affect the judgment that ultimately disposes of the case."
Eriksen v. Mobay Corp., No. 18748-9-III, Comm'rs Ruling at 5 (Wash.Ct.App. Mar. 1, 2000) (quoting Fox, 115 Wash.2d at 505, 798 P.2d 808). The commissioner concluded, "[w]hether the partial summary judgment in question here will do so must await the final decision in this case." Comm'rs Ruling at 5.
PRETRIAL DISMISSAL OF REMAINING CLAIMS. On the first day of the scheduled trial, Mr. Eriksen was not present. At the conclusion of the pretrial motions, the court noted that Mr. Eriksen had not appeared, and told his counsel to think about what counsel would do if his client did not appear. In response, Mr. Eriksen's counsel stated that he was "getting more and more worried." Report of Proceedings (RP) (Pretrial Motions) at 77. He said he had only a brief call with his client the week before, and he did not know Mr. Eriksen's whereabouts. The court recessed for lunch and reconvened two hours later.
When the court reconvened, the court noted that Mr. Eriksen still had not appeared. Mr. Eriksen's counsel asked the court for a continuance "because we believe bringing the jury in without my client's presence would be difficult." RP (Jury Trial) at 3.
The court asked if Mr. Eriksen had been contacted. His counsel stated that he had been unable to reach Mr. Eriksen for the past two to three weeks. The last contact they had, he explained, was a brief call the week prior that was on a cell phone. Before the call was finished, the phone cut out and they were disconnected. During the call, Mr. Eriksen told his attorney that he was headed for an examination with a doctor. The attorney stated his belief that Mr. Eriksen did appear for that examination.
When the court asked if Mr. Eriksen's counsel had any more to add, he responded:
Other than in the last monthactually in the last two months, my client has been exhibiting I shall say more strained behavior than he has done in the past. Missing appointments like the one he had with Dr. Binder a month and a half ago, even missing the one a couple weeks ago has not been like him at any time.
I don't know what is going on. I'm sure the testimony in this case will show he is a fairly disturbed individual, but I don't have any more to add other than I have been unable to get in contact. He was aware the trial was supposed to start today, but...[.]
RP (Jury Trial) at 4-5.
Defendants moved to dismiss the case. The court asked if it denied the continuance, whether Mr. Eriksen's attorney intended to proceed. He responded that he had no choice but to proceed. Later, he indicated that while he agreed he needed Mr. Eriksen to testify in order to make a prima facie case, Mr. Eriksen was not scheduled to testify until the third or fourth day of trial.
The court denied the continuance because it found lack of good cause. The court granted the motion to dismiss without prejudice and listed five factors that it relied upon in dismissing the case: (1) Mr. Eriksen's reported "increasingly erratic behavior"[1]; (2) Mr. Eriksen was notified several times of the trial date; (3) Mr. Eriksen's attorney acknowledged the testimony of Mr. Eriksen was necessary to make a prima facie case; (4) "the Court is not willing to at this point incur the cost"[2]; and (5) the court learned a bench warrant was issued for Mr. Eriksen's arrest (in an unrelated matter) in Grant County, and the court speculated that might be "discouraging him from appearing in Court today."[3]
Mr. Eriksen appeals.

*492 ANALYSIS
Dismissal for Failure to Personally Appear. Mr. Eriksen contends the court abused its discretion by dismissing his lawsuit when he failed to personally appear on the first day of trial.
Under RCW 4.56.120(3), the court may dismiss an action and render a judgment of nonsuit when "the plaintiff fails to appear at the time of trial and the defendant appears and asks for a dismissal." However, it is not clear that this reference to "plaintiff" means the plaintiff through his or her counsel, or by personal appearance.
CR 40(d), which governs trials, states: "When a cause is set and called for trial, it shall be tried or dismissed, unless good cause is shown for a continuance. The court may in a proper case, and upon terms, reset the same." In addition, CR 41(b), which governs involuntary dismissal, states:
For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against him or her.
....
(D) Other Grounds for Dismissal and Reinstatement. This rule is not a limitation upon any other power that the court may have to dismiss or reinstate any action upon motion or otherwise.
If the plaintiff does not appear and is unrepresented at trial, the defendant is entitled to dismissal upon request. See Wagner v. McDonald, 10 Wash.App. 213, 516 P.2d 1051 (1973) (plaintiff's action was dismissed because neither the plaintiff nor any representative of the plaintiff appeared to prosecute the action); Alexander v. Food Servs. of Am., Inc., 76 Wash.App. 425, 886 P.2d 231 (1994) (mother's failure to join case and failure to appear at month-long trial adjudicating ex-husband's right to damages for injuries to child precluded her own subsequent suit for damages).
In Springer v. Department of Licensing, 24 Wash.App. 847, 604 P.2d 994 (1979), the court considered the particular issue of whether a plaintiff must personally appear at a trial. After Mr. Springer's driver's license was suspended by the Department of Licensing for failure to submit to a breath test, he requested a hearing de novo before the superior court. When the matter came on for hearing, Mr. Springer did not personally appear. The trial court dismissed the action, even though Mr. Springer's counsel was present and indicated he wanted to proceed. Id. at 848, 604 P.2d 994.
The Springer court analyzed the case "in the context of a civil action originating in superior court." Id. at 850, 604 P.2d 994. The court stated it could not find case law addressing the issue, and thus referred to other jurisdictions. The court noted that in modern times, civil cases often proceed to trial without the personal presence of one or all the parties.
Present day practicalities, considering the various corporeal and incorporeal entities that constitute parties or persons for the purposes of litigation, mitigate strongly against any rule requiring the physical presence of the plaintiff or defendant, petitioner or respondent at the trial of a civil case.
Id. at 851, 604 P.2d 994. The Springer court limited its holding to cases involving the type of appeal Mr. Springer sought, but nevertheless concluded that the personal presence of the appellant in those cases was not necessary. Id.
The out-of-state cases cited by the Springer court all held that the dismissal of a case for the failure of the plaintiff to appear constituted error. See Hiltibrand v. Brown, 124 Colo. 52, 234 P.2d 618 (1951); Elmer Fox, Westheimer & Co. v. B-X Corp., 146 Ga.Ct. App. 385, 246 S.E.2d 413 (1978); see also Franks v. Reid, 128 Ga.Ct.App. 454, 197 S.E.2d 154 (1973); Brown v. Best, 44 Ohio App.2d 82, 335 N.E.2d 734 (1974).
We are presented with two questions. First, was the trial court authorized under RCW 4.56.120(3) to dismiss Mr. Eriksen's action for nonappearance? Second, did the trial court have authority under CR 40 and CR 41 to dismiss Mr. Eriksen's action based upon its conclusion that Mr. Eriksen was not prepared to proceed with his case? Our answer to both questions is "no." Because *493 Mr. Eriksen was represented by counsel, who indicated he was ready to proceed, Mr. Eriksen had appeared at the time of trial. His case could not be dismissed under RCW 4.56.120(3) for nonappearance. Finally, under these circumstances, the trial court abused its discretion by dismissing Mr. Eriksen's action.
Failure to Use CR 60. Northwest Ag Aviation contends that Mr. Eriksen's failure to use CR 60 constituted a waiver of any right of appeal from the dismissal. Northwest Ag Aviation fails to cite any authority for this position other than Link v. Wabash R.R., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). In Link, the court dismissed for failure to prosecute because both the plaintiff and the plaintiff's attorney failed to appear at a pretrial conference. Link, 370 U.S. at 628-29, 82 S.Ct. 1386. By way of dicta, the court noted that Federal Rule of Civil Procedure 60(b) provided a means by which the court could grant relief from its order. Link does not stand for the proposition that the failure to use CR 60(b) constitutes a waiver of a right to appeal. Mr. Eriksen's failure to move under CR 60(b) did not waive his right to appeal the trial court's dismissal of his case. See RAP 2.2.
Summary Judgment. As a preliminary matter, Bayer argues that Mr. Eriksen is not entitled to seek an appeal of his claims against it, because the commissioner ruled his appeal was untimely and therefore the appeal was dismissed and is no longer viable. For the purpose of our analysis, we assume without deciding, that Mr. Eriksen's appeal is timely.
"When reviewing an order granting summary judgment, the appellate court engages in the same inquiry as the trial court." Barr v. Day, 124 Wash.2d 318, 324, 879 P.2d 912 (1994). It must consider the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Hansen v. Friend, 118 Wash.2d 476, 485, 824 P.2d 483 (1992). The appellate court must reverse summary judgment if the evidence could lead reasonable persons to reach more than one conclusion. On the other hand, it must affirm if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).
The FIFRA Preemption. The Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. § 136, requires the manufacturer, as the primary registrant, to register with the Environmental Protection Agency (EPA) all labeling and packaging for the regulated chemical. The labeling must include warnings and precautionary statements, as well as directions for use. See 40 C.F.R. 156.10. These warnings and directions must be adequate to protect the public from harms which include "personal injury." 40 C.F.R. 156.10(i)(1)(i).
The FIFRA "`preempt[s] conflicting state law causes of action that impose a duty to provide a warning in addition to or different from federally established labeling requirements.' " Lescs v. Dow Chem. Co., 976 F.Supp. 393, 397 (W.D.Va.1997) (quoting Worm v. Am. Cyanamid Co., 5 F.3d 744, 745 (4th Cir.1993)), aff'd sub nom. Lescs v. William R. Hughes, Inc., 168 F.3d 482 (4th Cir.1999). "`"[State] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."'" All-Pure Chem. Co. v. White, 127 Wash.2d 1, 9, 896 P.2d 697 (1995) (quoting Cipollone v. Liggett Group, Inc., 505 U.S. 504, 521, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)) (alteration in original).
The trial court noted that during summary judgment argument, Mr. Eriksen conceded that his only viable claim against Bayer was for a design defect based on the consumer expectations theory. Bayer conceded, in turn, that for purposes of the argument, Mr. Eriksen had introduced sufficient evidence to create a genuine issue of material fact as to whether the pesticide in fact volatilized. The court held that the FIFRA preempted Mr. Eriksen's claims against Bayer.
Washington's product liability statute provides "[a] product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence *494 of the manufacturer in that the product was not reasonably safe as designed...." RCW 7.72.030(1). Strict liability is the applicable standard for a design defect product liability claim maintained under RCW 7.72.030(2). Falk v. Keene Corp., 113 Wash.2d 645, 654-55, 782 P.2d 974 (1989).
A plaintiff who seeks to establish liability on the part of a manufacturer under RCW 7.72.030 may do so in two distinct ways. A plaintiff may establish liability by showing that, at the time of manufacture, the likelihood that the product would cause the plaintiff's harm or similar harms, and the seriousness of those harms, outweighed the manufacturer's burden to design a product that would have prevented those harms and any adverse effect a practical, feasible alternative would have on the product's usefulness. See RCW 7.72.030(1)(a). Alternatively, a plaintiff may use the "consumer expectations" test, which requires the plaintiff to show that the product was "unsafe to an extent beyond that which would be contemplated by the ordinary consumer." Falk, 113 Wash.2d at 654, 782 P.2d 974 (citing RCW 7.72.030(3)). By the time of trial, Mr. Eriksen pursued only a "consumer expectations" claim against Bayer.
Under the consumer expectations tests, expectations are judged against the reasonable expectations of the ordinary consumer. Soproni v. Polygon Apartment Partners, 137 Wash.2d 319, 327, 971 P.2d 500 (1999). The court has suggested that `"it may be unreasonable for a consumer to expect product design to depart from legislative or administrative regulatory standards, even if to do so would result in a safer product.'" Id. (quoting Falk, 113 Wash.2d at 655, 782 P.2d 974).
However, the Soproni court noted "that conformity with codes may satisfy consumer expectations, evidence of compliance with codes should not foreclose the plaintiffs' claims. Rather, evidence of whether or not a product was in compliance with legislative or administrative regulatory standards is merely relevant evidence that may be considered by the trier of fact." Soproni, 137 Wash.2d at 328, 971 P.2d 500. The court continued that "[f]undamentally, it is for the trier of fact to determine if the product was unsafe to an extent beyond that which would be expected by an ordinary consumer." Id. (citing RCW 7.72.030(3)).
In holding Mr. Eriksen's claim was preempted, the trial court relied upon Lescs, a case from the Western District Court in Virginia, that in turn relied upon Papike,[4] a Ninth Circuit case. In Lescs, a homeowner sued an insecticide manufacturer and an exterminator for negligence, breach of warranties, and negligent and intentional misrepresentation after the fumes from the insecticide application rendered her home uninhabitable. That court found that the FIFRA preempted the claims. Specifically, the Lescs court found that the homeowner could not proceed under a consumer expectations theory to show defective design. Lescs, 976 F.Supp. at 399. The court reasoned this was true because the claim was preempted by the FIFRA. "For this court to allow a claim of defective design based on consumer expectations would represent an unwarranted end-run around federal preemption." Id.
In Papike the plaintiff sued a tampon manufacturer under a product liability action after she contracted toxic shock syndrome. In that case, the Ninth Circuit held that the warnings on the tampon box "met the federal requirements and Papike's design defect claim therefore fails the `consumer expectation' test." Papike v. Tambrands Inc., 107 F.3d 737, 743 (9th Cir.1997). The court concluded, "[t]o rule otherwise would allow the anomalous circumstance that a consumer is entitled to expect a product to perform more safely than its government-mandated warnings indicate." Id.
A third and similar case, Reece v. Good Samaritan Hospital, 90 Wash.App. 574, 953 P.2d 117 (1998), is relied upon by Bayer. In that case, a plaintiff sued a tampon manufacturer after she contracted toxic shock syndrome. Division Two found that while a genuine issue of material fact existed regarding the risk-utility test, no such issue existed related to the consumer expectations test. *495 The court stated that the consumer expectations test could not be met, "where, as here, a manufacturer has adequately warned consumers of the risks associated with using a product." Id. at 583, 953 P.2d 117. One of the cases relied upon by Reece for this proposition was Papike.
Mr. Eriksen urges that these cases are only persuasive and are not binding on this court. He contends that Soproni, a Washington Supreme Court case, is binding on this court, and instructs that his design defect claim is not preempted by the FIFRA.
In Soproni, a plaintiff mother sued a window manufacturer for negligent design and failure to warn when her 20 month old child fell out of a window and sustained severe head injuries. In that case, the court found that the window complied with "all codes and standards applicable to its design, manufacture, and use." Soproni, 137 Wash.2d at 328, 971 P.2d 500. The court ultimately found that conformity with applicable codes does not preclude design defect claims.
Soproni is distinguishable from this case. In that case, no evidence was presented of a comprehensive, federal scheme that not only regulated the manufacture and use of the windows, but also specifically indicated it preempted any state requirements that differed from the federal requirements. In other words, in this case, the manufacture and labeling of pesticides is heavily regulated and controlled by the federal government under the FIFRA. The FIFRA is a comprehensive scheme that details the requirements a pesticide manufacturer must meet, including warnings and precautionary statements. No evidence of a similar scheme regulating windows is mentioned or discussed in Soproni.
Moreover, the FIFRA specifically preempts conflicting state law causes of action that would impose a duty to provide a warning that is different or in addition to its requirements under the federal scheme. If Mr. Eriksen was permitted to pursue his claim, his claim would be that Monitor should have been designed differently so that it would not have volatilized, or that a warning should have been included to inform the ordinary consumer that the pesticide might volatilize and move to other crops or fields.
While Mr. Eriksen is correct that Papike is only persuasive, its reasoning is sound and it should be applied to this case. Mr. Eriksen cannot escape the conclusion that if he prevailed on this claim, it would have the anomalous result that a "consumer is entitled to expect a product to perform more safely than its government-mandated warnings indicate." Papike, 107 F.3d at 743.
We affirm the trial court's summary judgment order holding that Mr. Eriksen's claim against Bayer is preempted by the FIFRA. We reverse the order dismissing Mr. Eriksen's other claims and remand for trial.
WE CONCUR: SWEENEY, J. and BROWN, J.
NOTES
[1] RP (Jury Trial) at 12.
[2] RP (Jury Trial) at 12.
[3] RP (Jury Trial) at 13.
[4] Papike v. Tambrands Inc., 107 F.3d 737 (9th Cir.1997).